FILED

2014 APR 14  PM 4:22

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT CALIF.
SANTA ANA

BY:_____

John B. Ramirez
Juanda K. Anderson
Pro Business Coach, Inc.
1442 E. Lincoln Ave. # 352
Orange, Ca. 92865
(714) 328-5930
FAX (714) 464-2219
Petitioners In Pro Se

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SACV14-0581 JLS(ANx)

| | |
|---|---|
| JOHN B. RAMIREZ, ) | Case No. |
| JUANDA K. ANDERSON, AND) | |
| PRO BUSINESSS COACH, INC.) | 1. PETITION TO QUASH |
| ) | SUMMONS 26 USC § 7609(h); |
| Petitioners, ) | ISSUING A SUMMONS FOR AN |
| ) | ILLEGAL PURPOSE OF |
| ) | (A) FEDERAL WITNESS TAMPERING |
| vs. ) | 18 USC § 1512; |
| ) | (B) VIOLATION OF THE IRS |
| ) | RESTRUCTURING AND REFORM |
| UNITED STATES OF ) | ACT OF 1998 SEC. 1203(b)(6), |
| AMERICA, ) | RETALIATORY AUDITS |
| ) | |
| Respondent ) | |
| ) | |
| ) | **(Jury Trial Requested** |

# PETITION

Petition To Quash Summons                    i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

Jurisdiction & Standing of the Petitioners                              1

The Parties                                                             3

Statement of Facts                                                      7

Substantiation For The Allegation That The Summons Were
Issued For An Illegal Purpose                                          18

All Of The Actions Undertaken By The IRS And Its Agents
Against The Petitioners Have Been For The Illegal Purpose
Of Covering Up The Incompetence Of Stroud, And Cornejo
In Complicity With Other Agents That Violate The IRS
Restructuring and Reform Act Of 1998                                   18

The Abuse of the Issuance of Summons By
The IRS Is A System Wide Practice                                      20

The Summons To Petitioner Ramirez Was Issued For The Illegal
Purpose Of Witness Tampering Under The Color Of Law                    24

The Issuance of Summons For An Illegal Purpose
Is Also Used to Violate 26 USC § 7609(a)(1)                           27

The Summons Issued In This Case And In Previous Cases
Were Intended Only For Harassment, Intimidation,
Character Assassination, And Retaliation                               29

The Intentions Of The IRS Agents Are Betrayed By Their
Actions and Conversations With EA Ronald J. Channels                   32

The Issuance Of A Summons For An Illegal Purpose
Is Also An Abuse Of Process                                            34

Justification Of Damages                                               36

Conclusion                                                             38

Declaration of John B. Ramirez

# TABLE OF EXHIBITS

A        Summons To Union Bank Re: Juanda K. Anderson Re:

       Juanda K. Anderson

       Society For International Prosperity

       Pro Business Coach, Inc.

       John Baptist Ramirez

       United Associations, Inc.

       United Associations

       National Health Association

       Luminati Services, LLC.

       Night Hawk Enterprises, LLC.

       Four Corners Company, LLC.

       Church of the Revelation

B        Summons To American Express Re: Juanda K. Anderson

C        Summons To BBCN Bank Re: John B. Ramirez

D        Summons To Union Bank Re: John B. Ramirez Re:

       John B. Ramirez

       Night Hawk Enterprises, LLC.

       Juanda K. Anderson

       Medicine Bow Properties, LLC.

       Tabula Rasa

       Johnny Rhondo Trust

       Comprehensive Health Association

       Club 24

1  Laser Health Care, LLC.

2   Laser Dental Center Association

3  United Associations

4  Wegener Family Trust

5  Society For International Prosperity

6  Mimbari Wind Trading Company, Inc.

7  CDCA Management Services

8  Church of the Revelation

9

10  E  Summons To Union Bank Re: Pro Business Coach, Inc.

11  F  Dissolution Documents of Pro Business Coach, Inc.

12
13  G  Letter from IRS dated 4/18/12

14  H  Petitioner's response letter dated 5/3/12

15
16  I  Letter from IRS dated 5/14/12

17  J  Petitioner's response letter dated 5/18/12

18  K  Administrative Claim To the IRS Commissioner

19  L  IRS Non-Retaliation Policy
20

21

22

23

24

25

26

27

28

# JURISDICTION

NOW COMES PETITIONERS John B. Ramirez and Juanda K. Anderson, and Pro Business Coach, Inc. as an alter ego of John B. Ramirez (herein "Petitioners") in the Motion to Quash Summons) to Federal District Court since this court is the proper venue, and has jurisdiction to commence this action pursuant to 26 USC § 7609(h) according to the summons served, and attached hereto as **(Exhibits A, B, C, D, and E)**.  The Respondent to this Petition is the United States of America who supervises the Department of the Treasury, Internal Revenue Service. This action arises out of the actions of the Department of the Treasury Internal Revenue Service and its agents against the Petitioners.  Those actions that were taken by the Respondent and his agents against the Petitioners occurred in the jurisdiction of U.S. Federal District Court of California Central District Orange County.

Two previous actions were filed against the same Respondent as Case No. SACV12-02100 JVC(MLGx), and SAVC13-00268 JVS(RNBx) and are related to this action.  Both of these cases are under appeal to the Ninth Circuit Court of Appeals.

# STANDING OF THE PETITIONERS

Pursuant to 26 USC § 7609, "...any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under Section 7604."  Petitioners John B. Ramirez and Juanda K. Anderson are entitled to notice of summons and therefore have the right to begin a proceeding to

quash.

In this case John B. Ramirez received notice from Union Bank that it was summoned to produce financial records of bank accounts for companies, persons, and organizations the Petitioner Ramirez at one time or at the present has or has had signatory authority. These companies and organizations are:

    a. Night Hawk Enterprises, LLC.

    b. Juanda K. Anderson

    c. Medicine Bow Properties, LLC.

    d. Tabula Rasa

    e. Johnny Rhondo Trust

    f. John B. Ramirez

    g. Comprehensive Health Association

    h. Club 24

    i. Laser Health Care, LLC.

    j. Laser Dental Center Association

    k. United Associations

    l. Wegener Family Trust

    m. Society For International Prosperity

    n. Mimbari Wind Trading Company, Inc.

    o. CDCA Management Services

    p. Church of the Revelation

In this case Juanda K. Anderson received notice from Union Bank that it was summoned to produce financial records of bank accounts for companies, persons, and organizations the Petitioner Anderson at one time or at the present has or has had signatory authority. These companies and organizations are:

a. Society For International Prosperity

b. Pro Business Coach, Inc.

c. John Baptist Ramirez

d. Juanda K. Anderson

e. United Associations

f. National Health Association

g. Luminati Services, LLC.

h. Night Hawk Enterprises, LLC.

i. Four Corners Company, LLC.

j. Church of the Revelation

Pro Business Coach, Inc. is currently a dissolved corporation (**Exhibit F**) and pursuant to its documents of dissolution, it is now the alter ego of John B. Ramirez since he was the final shareholder and sole director at dissolution. In this case Pro Business Coach, Inc. received notice from the IRS that Union Bank was summoned to produce financial records of bank accounts etc.

It is the contention of the Petitioners that all of the summons have been issued for the illegal purpose of violating 18 USC § 151, and violating the harassment and retaliation provisions of Section 1203 (b)(6) of the IRS Restructuring and Reform Act of 1998.

## THE PARTIES

1. John B. Ramirez (hereinafter "Petitioner") was the key witness in the U.S. Tax Court No. 14915-11, and is a key witness on other Tax Court cases currently on file. His full name, pursuant to Hispanic cultural traditions

is John Baptist Ramirez y Castro y Perez y Rhondo. As an actor member of SAG/AFTRA and writer, director and producer, he is also known as Johnny Rhondo in the entertainment industry. He is also the Founder of the Church of the Revelation, a Gnostic 26 U.S. § 501(c)(3) religious organization that has been in existence since 1978. Since the attainment of good health is a Gnostic religious principle, he has worked for many years with health care providers and aided their efforts in research and development. Even though he is a Gnostic minister, for the majority of his working life he has worked as a consultant for business organizations and operations. He resides in the city of Orange, in Orange County California. He is also the named responsible party for the final disposition of the assets and liabilities of the dissolved California Corporation Pro Business Coach, Inc. His business experience has also provided him information about the tactics used by the IRS in audit procedures.

2. Juanda K. Anderson is an individual who at one time operated the Sub-Chapter S Corporation known as Pro Business Coach, Inc., a California corporation. She has had no involvement with the corporation since its dissolution, and currently lives in Orange, California.

3. Pro Business Coach, Inc., is a dissolved California corporation (**Exhibit F**) and since John B. Ramirez is the named responsible party for the final disposition of the assets and liabilities of the corporation, it is now the alter ego of John B. Ramirez for purposes of this petition.

4. Christopher Holden, M.D. is a physician who currently practices medicine under the name Holden Medical Corporation whose primary office

is located at 438 E. Katella Ave. Ste, B. in Orange, California.

5. Karen Holden is the ex-wife of Christopher Holden, M.D. who is a high school teacher and currently lives in Placentia, California.

6. The law and accountancy firm, Channels and Channels, currently represent over 40 clients that have been subjected to retaliatory audits by the Respondent and its agents and who currently represent those clients in audits and in the U.S. Tax Court from their offices in Costa Mesa, California. Ronald J. Channels (herein "Channels") is an enrolled agent for that firm. Walter Channels is an attorney licensed to practice in the State of California for that firm. Ronald J. Channels and Petitioner Ramirez have filed an Administrative Claim with the Commissioner of the Internal Revenue explaining this misconduct by IRS Agents. **(See Exhibit K).**

7. Jane Garcia is an individual who was previously the office manager and at one time operated the Medical Service Organization that provided management services to the medical practice of Christopher Holden, M.D. However, she stopped providing those services on or about the Fall of 2009.

8. Anjana Sura, M.D. was an associate of the Christopher Holden, M.D., Inc. for approximately 3 months. Both her and her son Amit Sura practice medicine in the Los Angeles area.

9. Beth E. Stroud (herein "Stroud") is an Internal Revenue Service Agent who works out of the Small Business/Self Employed division of the Internal Revenue Service in Santa Ana, California.

10.  Isabel Cornejo (herein "Cornejo") is an Internal Revenue Service Agent who works out of the Small Business/Self Employed division of the Internal Revenue Service in Santa Ana, California in conjunction with Beth E. Stroud.

11.  Gail Kaipio is an Internal Revenue Service Agent who works out of the Small Business/Self Employed division of the Internal Revenue Service of Orange County California in conjunction with Beth E. Stroud.

12.  Linda J. Petrillo is an Internal Revenue Service Agent who works out of the Small Business/Self Employed division of the Internal Revenue Service of Orange County California in conjunction with Beth E. Stroud, and is the Examination Area Director of that department.

13.  Trinh Diep (herein "Diep") is an Internal Revenue Service Agent who works out of the Small Business/Self Employed division of the Internal Revenue Service in Santa Ana, California in conjunction with Beth E. Stroud and Isabel Cornejo.

14.  Further discovery is also necessary to determine the complicity or responsibility of the supervisors of these agents or to what extent they authorized the actions of IRS Agents Stroud, Kaipo, Petrillo, Diep, or Cornejo, but they will be referred to as "supervisors" for purposes of this complaint and it is reasonable to assume that at all times the supervisors authorized the actions of their subordinates.  Further, should discovery result in discovering the criminal involvement of these or other employees of the Respondent, they will be named as does and this petition will be amended.

# STATEMENT OF FACTS

15.  Petitioners were served with a copy of a Third Party Summons **(Exhibits A, B, C, D, E, and F)** requesting these financial institutions to produce certain documents, information and account records belonging to the Petitioners, on or about April 3, 2014. Petitioners herein are timely filing a Motion to Quash Summons on the basis that the summons were issued for an illegal purpose.

16.  The Petitioners have a long and well-documented history of always timely filing their income taxes, and there has never been any evidence to the contrary.  Until the year 2012, the Petitioners never been audited, or have been the subject of inquiry by the IRS for any violations of the tax code. The Petitioners have information gleaned from conversations with IRS employees, and a recent FOIA action that they have been the object of retaliatory audits and witness tampering by the IRS as a result of the audit conducted by IRS Agent Beth Stroud on Christopher Holden, M.D. and his ex-wife Karen Holden.

17.  The source of the summons that have been issued for an illegal purpose can be traced to IRS Agent Beth E. Stroud, who was assigned to audit the corporate and personal tax return of Christopher Holden, M.D. in April 2010.  Due to her admitted ignorance of how a medical business is conducted, she attributed the losses of the medical practice to tax evasion.  She spent the next 2 years and over $100,000.00 of the government's money and resources trying to prove her hypothesis, but after Dr. Holden filed his Tax Court Petition, she realized that all of her efforts were unjustified.  Since May of

2012, she has spent her time filing retaliatory audits against anyone who remotely knows Dr. Holden (the Petitioners), and caused retaliatory audits to be filed against Dr. Holden's Tax Preparer, EA Ronald J. Channels, and over 40 of his clients, along with multiple audits on each client, in the hopes that she might be able to justify her grand expense. **(See Exhibit K)**

18. Christopher Holden, M.D. and his ex-wife Karen Holden, were audited by IRS Agent Stroud for the year 2007, but currently that audit has been expanded to include the year 2008, 2009, 2010, 2011, and 2012. All actions against the Petitioners, clients of Enrolled Agent Ronald J. Channels, and violations of their constitutional rights are directly related to the audit initially conducted by IRS Auditor Beth Stroud on Christopher Holden, M.D. and his ex-wife Karen Holden for the year 2007.

19. The medical practice of Christopher Holden has been plagued with a variety of disasters that include, but are not limited to, three major floods of his offices that destroyed all of his financial and tax records.

20. When Christopher Holden became aware that he and his ex-wife were being audited by IRS Auditor Stroud for the tax year 2007. Christopher Holden contacted the firm of Channels and Channels, Inc. for representation.

21. When Stroud was first contacted by telephone by Attorney Daniel Uribe with Petitioner Ramirez present, she indicated that she wanted to see tax records that could substantiate the deductions taken on Dr. Holden's tax return for 2007. When she was informed that the records had been destroyed in a flood, she stated, "To me it sounds like tax evasion, and unless I get what I ask

for, I will take steps to put Dr. Holden behind bars."

22.   Realizing that he would soon be the object of a criminal investigation that could result in his incarceration, according to Stroud, Dr. Holden exercised his Fifth Amendment rights pursuant to *Troescher v. Commissioner*, (1996) 99 F3d 933, and decided not to provide information that might possibly incriminate him.

23.   This infuriated Stroud and she began taking steps that she thought would prove her theory that Dr. Holden was a tax evader.

24.   It is unknown as to exactly how much time, effort, and the government's money Stroud invested in trying to make the case that Dr. Holden was evading taxes.  However, considering that she requested records from banks and used summons to obtain information from hospitals, Medicare, private individuals, and Dr. Holden's associates, the amount of the government's money she expended has been estimated to be over $100,000.00.

25.   During the audit process for the tax year 2007, Stroud showed signs of becoming "personally" involved in the audit, and especially when she learned that EA Ronald J. Channels, who had previously demonstrated how inefficient and arbitrary her audit practices were in a previous audit, would be representing Christopher Holden and his ex-wife.

26.   During the audit process for the tax year 2007, Stroud became extremely frustrated in her attempts to have other persons provide information that she could use against Christopher Holden.  When she discovered that

persons such as Jane Garcia, and Dr. Anjana Sura would not give her the information she wanted in the manner that would prove her case, she retaliated against them by auditing them and issuing notices of deficiency that were without merit or veracity.  Stroud was further angered when she realized that EA Ronald J. Channels also represented these parties.

27.  During the audit process, Stroud had many conversations with EA Ronald J. Channels that he in turn relayed to the Petitioners.  During those conversations, she indicated that she was absolutely certain that Christopher Holden was guilty of tax evasion, and that the information she gathered proved that fact, and that other persons were involved in the tax evasion scheme.  She also indicated to Channels on several occasions that she was being pressured by her superiors to bring the Holden case to a close with a charge of tax evasion by any means possible.  Channels, on several occasions, informed Stroud that the information she sought in the audit had been destroyed in two floods, and that her insistence on "original" records to substantiate expenses was simply not possible.

28.  However, as the audit proceeded, and when many missing items and information were recovered by the firm of Channels and Channels as a result of a FOIA action that were also shared with Stroud, she became aware that John B. Ramirez possessed vital information that could possibly exonerate Christopher Holden from any tax liability.

29.  On March 28, 2011, Stroud issued a Notice of Deficiency to Christopher Holden and his ex-wife. Christopher Holden and his ex-wife timely filed a Petition in the U.S. Tax Court for the tax year 2007 as Case No. 14915-11.

30. After the Petition in the U.S. Tax Court was filed, Stroud informed Channels that she has never had any of her audits challenged in the U.S. Tax Court and that she was holding Petitioner John B. Ramirez personally responsible for this stain on her record since she now knew that he had been the practice manager and consultant for Dr. Holden for several years.

31.   Thereafter, Stroud continued to file retaliatory underline multiple audits against Jane Garcia and her company, Dr. Sura and her company, Dr. Sura's son Amit Sura, Karen Holden and her company, and her son James Holden. Later, Stroud issued statements of deficiency to Jane Garcia, Dr. Anjana S. Sura, Anjana Sura, M.D., Karen Holden. As a result, Jane Garcia, Dr. Anjana S. Sura, Amit Sura, and now Karen Holden have filed tax court petitions currently in the U.S. Tax Court.

32. By this time, now facing several separate Tax Court Actions, and more to come from her continued audits of Garcia, Sura and Holden, Stroud informed Channels that she might lose her job, and begged Channels to talk his client into withdrawing his petition in Tax Court.

33. Fearing the loss of her job, Stroud enlisted the help of Isabel Cornejo and told her that John B. Ramirez and Pro Business Coach, Inc. were responsible for creating corporations and business entities for Dr. Holden and other parties for the purpose of tax evasion, and that EA Channels was not only working in concert with him, but also was responsible for filing tax returns that promoted tax evasion.

34. As the date drew closer for the Tax Court Hearing of Christopher and Karen Holden for the year 2007, Case No. 14915-11, the witnesses for

that case had to be disclosed before to the 30 day Meet and Confer meeting held prior to the commencement of the Tax Court Hearing. Stroud became informed that John B. Ramirez was on the witness list and that he would be attending the Meet and Confer Meeting.  Stroud was informed by EA Channels that John B. Ramirez would be introducing facts that would be very detrimental to the case she was trying to make against the Holdens.   Stroud indicated to EA Channels that she feared that John B. Ramirez might reveal information that would cause her to appear incompetent at the Meet and Confer meeting that had been scheduled for May 3, 2011 because she had audited a medical practice corporation without the faintest idea of how that type of business operates.

35. Though the letter was dated by hand as April 18, 2012, John B. Ramirez did not receive the letter from Linda J. Petrillo until May 1, 2012, *two days before he was to testify*, that informed him that he was being investigated for creating abusive tax shelters. (**Exhibit G**)

36. The Petitioners are informed, believe and on that belief allege that this was a concerted effort by Stroud and Cornejo to tamper with the witness Ramirez, in order to prevent him from attending the meeting on May 3, 2012. Nonetheless, the Ramirez did respond by certified mail on May 3, 2012 requesting a clarification of the April 18, 2012 letter. (**Exhibit H**)

37. On or about May 14, 2012, Ramirez received another letter from the IRS in response to his letter of May 3, 2012, but this time from Gail Kaipio. (**Exhibit I**)

38. The Petitioner Ramirez responded by certified mail on May 18,

2012, again asking for a clarification of the documents requested. **(Exhibit J)** Just as in the case before, there was no response regarding a clarification of the documents requested. Significantly, whenever Ramirez asked for something specific in writing, he never received it.

39. At the newly set Meet and Confer meeting normally held 30 days prior to the original court date of June 16, 2012, there were in attendance, EA Ronald J. Channels, Atty. Walter Channels, Beth E. Stroud, Atty. Sandy Hwang, and John B. Ramirez. It was at that time that Stroud's suspicions were verified that the Ramirez possessed sufficient information that would ruin her entire case against Christopher Holden. Moreover, at that meeting it became apparent to her and IRS Attorney Hwang that her case against Christopher Holden, M.D. would be unjustified as a result of the combination of verifiable accounting records produced by the FOIA action, and their substantiation by the testimony of Ramirez and Jane Garcia.

40. The Petitioners have information, are informed, believe and on that belief allege that Stroud knew she had to increase her efforts of intimidation in order to keep Ramirez, Garcia and Channels from destroying her case and her actions justify this allegation.

41. In an effort to destroy their reputations, the Petitioners have information, are informed, believe, and on that belief allege that, as a result of conversations with other auditors who have met with EA Channels, Stroud intentionally misrepresented the actions of Ramirez and Channels to the IRS and her colleagues in order to cover up her incompetent audit, and justify an extraordinary expenditure on behalf of the government that had produced no

results.

42.  To this end, the Petitioners have information from other auditors, and are thus informed, believe, and on that belief allege that Stroud worked with IRS Agent Isabel Cornejo in order to tamper with a witness in a federal proceeding under color of federal authority, and then Isabel Cornejo used the power of her office to initiate retaliatory audits on Ramirez, Channels, and Channels' clients with the specific intent of ruining EA Channels' business and his reputation.  Thus, she promulgated the falsehood that EA Channels also created abusive tax shelters while in the process filing income taxes for his clients.   (Agent Cornejo admitted to EA Channels that she firmly believes that Corporations and LLC's are abusive tax shelters)

43.  The actions by Stroud and Cornejo were undertaken with the approval of their respective supervisors, who both Stroud and Cornejo refuse to name, and who have worked in conspiracy with Cornejo and Stroud, or were duped by them into believing that what they were doing was in the best interest of the IRS.

44. The Petitioners have information, are informed, believe, and on that belief allege that both Cornejo and Stroud, at that time, intended to tamper with a witness in a federal tax case in violation of 18 USC § 1512, and initiate retaliatory audits for the specific purpose of covering up their own incompetence, and perhaps their ignorance of small business operations, **and for no other reason**.

45.  Petitioner Ramirez first received a Notice of Audit From IRS Agent Trinh Diep dated July 10, 2012, and he made an appointment to meet

Diep in the month of August.  *__Significantly, this was several months after Stroud and Cornejo's attempts to tamper with the witness failed__*.  At this meeting, a man identifying himself to be her supervisor, Mayank Patel, also attended the meeting.  At this meeting Ramirez informed Diep about **all** of the actions Stroud and Cornejo had undertaken and his response to those actions in great detail.   He also informed her of the constitutional violations, retaliation, witness tampering, and the improper use of the summons by Stroud and Cornejo.  Diep admitted to working in the same IRS section as Beth Stroud, and that the constitutional violations, witness tampering, and retaliations were of no consequence to her.

46.   On or about mid October, 2012, IRS Agent Isabel Cornejo contacted the accountancy and law firm of Channels and Channels, with summons in hand, and wanted Ronald J. Channels to divulge information regarding their relationship with John B. Ramirez and any clients they have in common.  Since Ronald J. Channels is an Enrolled Agent and keeps records for Ramirez, he falls under the terms of the Tax Reform Act of 1976 that requires notification to the taxpayer that the IRS is summoning third party record keepers.  IRS Agent Isabel Cornejo failed to inform Ramirez of the information she sought from third parties in violation of 26 USC § 7609 (a).  She also told Channels not to reveal to anyone that she had come to his office seeking records on Ramirez.

47. After taking on the responsibility for the audit of Dr. Christopher Holden and his subsequent Tax Court Cases, since 2012 to the present, EA Ronald J. Channels and over 40 of his clients have been subjected to retaliatory audits promulgated by Isabel Cornejo according to auditors that have come by his office.  Additionally, the business primarily operated by

Ronald J. Channels, Channels & Channels, Inc., has had its reputation ruined, and suffered significant financial loss, once it became known that the IRS is targeting all of his clients.  Further, his personal reputation has been tarnished, perhaps, beyond repair, unless the IRS exonerates him by granting this claim. **(See Exhibit K)**

48.  Jane Garcia has received 4 retaliatory audits that have resulted in 2 Tax Court Petitions to date.  The reason for these audits is that Jane Garcia refused to provide false information that would aid Stroud in her case against Dr. Christopher Holden.

49. Christopher Holden, M.D. has become the target of 5 more retaliatory audits simply because he refused to provide information that would implicate him in the crime of tax evasion even though, in the recent Tax Court Hearing held on December 13, 2013, no evidence of tax evasion or fraud was presented to the Tax Court by the IRS.  Currently, Dr. Holden has 2 other Tax Court Cases pending.

50. Juanda K. Anderson, previous shareholder of Pro Business Coach, Inc. has become the target of 3 retaliatory audits simply because she refused to provide information regarding the relationship between herself and Christopher Holden, M.D., who is her personal physician, that could help Stroud develop her case of tax evasion against him.

51.  Dr. Anjana Sura and her son Amit Sura, have become the targets of 5 retaliatory audits, with two Tax Court Petitions currently one file at this time.  One of Dr. Sura's retaliatory audits has recently been settled with **no**

**change**.

52.   Petitioner Ramirez has not only been the object of a bogus investigation that resulted in no criminal or fraud charges pursuant to falsehoods promulgated by Stroud and Cornejo, but has also been the object of 3 retaliatory audits, and has loss of his good reputation in the community due to the actions of IRS Agent Trinh Diep who works in conjunction with Stroud.   Further, his personal reputation as a minister has been severely damaged as a result of the actions of IRS Agent Trinh Diep.   **(See Declaration of John B. Ramirez)**

53.   The dissolved California corporation Pro Business Coach, Inc. is currently the object of 3 retaliatory audits due to the actions of IRS Agent Trinh Diep.

54.   Petitioners are informed, believe, and on that belief allege that Cornejo, Stroud and Diep, all work out of the very same IRS office located in Santa Ana, California, that they have conspired to violate the rights granted to them by the Tax Reform Act of 1976, and the IRS Restructuring and Reform Act of 1998.   Additionally, their violations also include but are not limited to, witnesses tampering, harassment, abuse of process, and retaliation for the sole purpose of preventing the discovery of Stroud's, and now Cornejo's inefficiency and incompetence, and all of these actions were performed under color of federal authority.

## Substantiation For The Allegation That The
## Summons Were Issued For An Illegal Purpose

**All Of The Actions Undertaken By The IRS And Its Agents Against The Petitioners Have Been For The Illegal Purpose Of Covering Up The Incompetence Of Stroud, And Cornejo In Complicity With Other Agents That Violate The IRS Restructuring and Reform Act Of 1998**

Petitioners hereby reallege and incorporate, as though set forth in full at this place, Paragraphs 1 through 54, inclusive above.

55. When Stroud conducted her audit of Christopher Holden and his medical practice, she counted all the moneys deposited into his corporate bank account as income, including the loans he deposited to maintain a failing practice, and then denied his legitimate business expenses. Then she spent thousands of dollars to prove that Christopher Holden was guilty of tax evasion. She also opened audits on anyone and any business associated with Christopher Holden to further substantiate her actions. To date her efforts have resulted in over 12 Tax Court cases with more on the way - the likelihood of the government prevailing in these cases are slim and none.

56. When Stroud reached the "point of no return", after spending thousands of man-hours and government dollars, she realized that her case against Dr. Holden would fail due to her lack of practical business knowledge, incompetence, and laziness. Further, EA Channels informed her that the U.S. Bankruptcy had already gone through all of Dr. Holden's finances during his 2009 Chapter 7 bankruptcy, and Jane Garcia's 2010 Chapter 7 bankruptcy. Stroud also became aware that Dr. Anjana Sura failed to take a large portion

of the deductions to which she was entitled, and now the government will have to refund her a substantial amount of money.

57.  Seeing that her competency would soon be called into question, Stroud enlisted the help of her supervisors, Isabel Cornejo, Trinh Diep, and others to cover up her own incompetence.  It is a well-known fact that every year the IRS must get rid of its own bad apples as a result of the investigations conducted by the Treasury Inspector General.  In this economy, Stroud did not want to be one of those agents that the Treasury Inspector General eliminates from the service.    Thus, using the power of her office, she has made misrepresentations to the IRS about the Petitioner Ramirez and EA Channels, who she holds personally responsible for her current predicament.  It is still her hope to discredit the testimony Ramirez will give in the upcoming tax court hearings involving Dr. Holden and others.

58.  Knowing that the courts seldom rule in favor of a taxpayer asserting a Fourth Amendment claim, Stroud, Diep, and Cornejo felt confident in successfully using the power of the IRS to harass and intimidate Petitioner Ramirez and his associates into capitulating to an action that they could dictate.  They also felt that they could pursue a course of retaliation against Ramirez and his associates so as to ruin them, their livelihood, and their reputations while claiming that the real reason was to "investigate" Ramirez and his associates.    As a result of their actions, Stroud, Diep, and Cornejo have violated the Petitioners' Fourth Amendment rights while acting under the color of federal authority.

59.  Even though the IRS has broad investigative powers that are usually always upheld by the courts, these powers should be tempered in a

case where an illegal purpose by the IRS agent is alleged.  Significantly, Petitioner Ramirez has never refused to provide information to the IRS Agents, but rather he only asked for an explanation for the items they was requesting.  If Cornejo and her associates had provided some substantiation for their requests then Ramirez would be making this petition in bad faith. However, this is not the case.    Cornejo and her associates have never provided any substantiation for their allegation that Ramirez created tax shelters and that he prepares and files income tax forms for his clients.  Small wonder that she cannot provide any substantiation - there is none.

60.    Thus, all actions taken by Cornejo and Diep against the Petitioners are a result of the misrepresentations of Stroud, are the basis for the following violations of Petitioners' constitutional rights by these federal agents who independently acted, on their own initiative, under the color of federal authority for the purpose of covering up their own incompetency. These independent actions by Stroud, Cornejo and Diep are not actions taken in the course of their job functions with the IRS; however, it is clear that the actions they have undertaken were done so purely for their own purposes and not on behalf of the Untied States of America.

## The Abuse of the Issuance of Summons By The IRS Is
## A System Wide Practice

61. The source of these violations by the IRS Agents are the result of policies and procedures that began in the Santa Ana, California office as promulgated by Stroud, Cornejo and Diep, and later spread to other IRS offices located in San Diego, Laguna Niguel and San Bernardino.  Other IRS

Agents and supervisors have worked in consort with Stroud, Cornejo and Diep in an effort to draw attention away from the wrong doings of these IRS Agents.    The violations are the result of the lack of training, lack of understanding business operations in general, ignorance of what is required to operate a business, ignorance of the law, as well as negligence and incompetence. The IRS auditors and supervisors that have acted in complicity with Stroud, Cornejo and Diep are:    Christopher Hall, Jennifer Parsons, Joanna Gutierrez, Catherine H. Martinez, Maria Ramirez, Mary Linan, Annie Tran, Lindy Liu, Mayank H. Patel, David Cho, Joseph Creede, Hung Pham. Hector Rivera, Brian McDonough, and Andrew K. Hong.    After being involved with a multitude of audits and Tax Court preparations, a pattern of audit abuse has emerged that indicates a methodology employed by the IRS employees that is seen across the Southern California Region that appears to be practiced on a large scale to indicate a program of intentional constitutional violations sanctioned by the IRS as a whole when auditing a small business and individuals. They are as follows:

    a. All audits begin with a demanding tone by the agents that indicate to a taxpayer that if cooperation is not forthcoming then criminal charges will be filed.

    b.    If the small business is incorporated or works as a partnership, IRS Agents consider any business organization to be an abusive tax shelter.

    c. It is typical in an audit of a business organization, or an individual, for the IRS to disregard all business deductions and pass

all the business's tax liabilities to the individual taxpayer.

d. IRS Agents attribute all money in a business bank account to be income even if personal capital or loans are deposited in order to keep the business viable.

e. The vast majority of IRS agents have never owned or operated a business and cannot or prefer not to understand the meaning of a legitimate business deduction.

f. When an IRS agent is attempting to serve documents to a taxpayer they do not adhere to the laws of service of process of the state in which they operate in violation of the Erie Doctrine. Service documents are taped to a door in windy weather, placed on doorsteps when no one is present, send certified mail without a return receipt to prove that the document was actually delivered, throw documents in the back yard or attach them to a fence, drop them on the floor of a place of business, attempt a third party service without also sending the requisite mailing, or give them to a neighbor to deliver. This practice often results in a privacy violation to the recipient.

g. IRS agents are blatant in their violations since they feel that their immunity will protect them and are very vocal about this to tax professionals. Taped interviews with IRS auditors are available upon request.

h. It is a well-known fact that a tax audit can cost from

$5,000.00 to $25,000.00 and up to $50,000.00 if a taxpayer decides to go to Tax Court.   Thus, it has become very common for IRS Agents to open a series of audits on a single taxpayer under their own authority in order to place a financial burden on the taxpayer that is so heavy that the taxpayer is forced to close his business, agree to unfavorable terms due to financial expediency, declare bankruptcy, or give up an join an underground economy.

     i.  In line with (h) above, IRS Agents abuse the power of their office by demanding records to be constructed in the manner that they dictate, regardless as to whether or not such reconstruction is reasonable or logical.   This becomes very costly for the taxpayer. Then if the IRS Agent is not satisfied with the organization of documents, the Agent will disallow legitimate deductions.

     j.   The Southern California IRS offices almost always invariably deny all requests to move an audit to another location when a taxpayer makes such a request in spite of the fact that tax records or the taxpayer's tax preparer lives in another state or county.  The IRS intentionally undertakes this action because it will increase the cost of an audit to the taxpayer such that he would be forced to capitulate to unfavorable conditions.

     k.  IRS Agents often apply their own personal arbitrary and capricious feelings to determine a tax liability rather than applying the IRS Code in order to harass the taxpayer and increase the cost of an audit.

l.  IRS Agents apply a more stringent burden of proof on the taxpayer than the law requires harassing the taxpayer and increasing the cost of an audit.  However, this tactic more often than not, creates the necessity for the taxpayer to petition the Tax Court in order to obtain a fair ruling regarding the acceptance of tax deductions.

m.  However, the most egregious of the IRS actions is the constant practice  of employing retaliatory audits on a taxpayer, his/her tax preparer, and the preparer's associates and or employees that violates their own policy. **(See Exhibit L)** Along with this practice is the constant harassment frequently employed under the color of federal authority.

62.  As taxpayers, the Petitioners view these practices as not only a violation of their constitutional rights, but also a waste the government's resources without any accountability.  The following series of events are not isolated to one or two IRS Agents, but a system wide problem that forces taxpayers into near bankruptcy while IRS Agents are free to make mistakes and ruin the lives of many honest taxpayers without a care to the devastation they cause and without fear of any consequences.  The preceding facts and circumstances not only happened, but continue to be ongoing. **(See Exhibit K)**

### The Summons To Petitioner Ramirez Was Issued For The Illegal Purpose Of Witness Tampering Under The Color Of Law

63. Petitioners incorporate by reference the preceding paragraphs 1

through 62 in support of this Petition.

18 USC § 1512(b) states:

"(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release, parole, or release pending judicial proceedings; shall be fined under this title or imprisoned not more than 20 years, or both."

64.   This particular portion of the statute applies here since Stroud, Diep, and Cornejo, along with their other accomplices are intentionally trying to prevent the Plaintiff from testifying on behalf of Christopher Holden and his ex-wife.  They are so intent on this purpose that they are willing to assassinate the character of the witness, and taint his testimony at trial.  It is a well-known fact that courts employ not only an analysis of law and facts in deciding their cases, but also employ "impression" to establish credibility of witnesses.

65.   The federal witness tampering statute applies <u>broadly</u> to any illegal behavior undertaken in an effort to have a witness not testify, or testify untruthfully, in any legal proceeding. The statute runs the gamut in terms of harm incurred upon a witness. Killing or attempting to kill a witness, <u>knowingly using intimidation</u> or physical force or "corruptly persuading" a witness, and intentionally harassing the witness are all outlawed under the statute. The punishment level is directly proportional to the severity of the crime: while a person convicted of having a witness killed can be sentenced to life imprisonment, a person convicted of harassing a witness into testifying untruthfully cannot be punished by more than a year of imprisonment.

66.   In order to obtain a conviction for most criminal statutes, the prosecution must show that the defendant possessed a requisite mental state. There are four different mental states applied to criminal statutes, based upon the culpability level of the defendant. The mental states, in increasing order of culpability, include negligence, recklessness, knowing behavior, and intentional behavior.  Interestingly enough, for the witness tampering statute, as the level of threats and violence escalate, the level of culpable mental state lowers.  While proving a defendant intentionally harassed a witness requires an intentional mental state, the prosecution need only prove the slightly less

stringent mental state of "knowing" in cases involving physical force or intimidation.  In cases involving killing a witness, the prosecution does not have to prove any mental state on the part of the defendant. In addition, a "proceeding" as defined by the statute is not limited to the courtroom; it can include an investigation.  Finally, the statute covers evidence beyond witness testimony by holding it a crime to "corruptly persuade" a witness to "alter documents" that would be used in an official proceeding.

67.  In this case, Stroud has exhibited proof of her state of mind and how desperate she is to obtain a conviction of tax evasion on Christopher Holden and his ex-wife.   Her frustration is seen in her usage of the power of her office to audit anyone and any entity related to Christopher Holden, M.D. so as to justify her actions, and in tampering with a witness, and retaliation under color of federal authority.

## The Issuance of Summons For An Illegal Purpose Is
## Also Used to Violate 26 USC § 7609(a)(1)

68.  Under the terms of the Tax Reform Act of 1976, in cases where the records of certain designated third-party record keepers are summoned by the IRS, the taxpayer himself must be notified of the issuance of the summons. This law specifically applies to "any accountant".

69. Ronald J. Channels is an enrolled agent, and as such is considered an accountant under the law.  The Petitioners have been informed by EA Channels that Agent Cornejo went to his office, with summons in hand, seeking information regarding the clients that both he and Petitioners Pro Business Coach, Inc. and Ramirez have in common.  EA Channels informed

Petitioners Pro Business Coach, Inc. and Ramirez that Cornejo made it clear that he would have no choice but to supply her with the information she requested.  However, Petitioners Pro Business Coach, Inc. and Ramirez <u>were never informed by summons or by any correspondence that a third party was being contacted to provide information that might be construed to be against them.</u>

70. This action by Cornejo is a specific denial of the Fourth Amendment rights to which the Petitioners are entitled, and a violation of 26 USC § 7609(a)(1).

71.  Likewise, the Tax Reform Act of 1976 requires that cases where the records of certain designated third-party record keepers are summoned by the IRS, the taxpayer himself must be notified of the issuance of the summons.  Trinh Diep, in a previous action, issued a summons to Union Bank for Records on a Trust known as the Wegener Family Trust without informing Ramirez and with the full knowledge that he would be out of the country when the summons was issued.

72. This action by Diep is a specific denial of the Fourth Amendment rights to which the Petitioners are entitled, a violation of 26 USC § 7609(a)(1), and an abuse of process since Diep was pursuing the ulterior motive of covering up her incompetence and that of Stroud and Cornejo, and for the specific reason of causing financial damage to the Petitioners.

**The Summons Issued In This Case And In Previous Cases Were Intended Only For Harassment, Intimidation, Character Assassination, And Retaliation**

73. Petitioners are informed, believe and on that belief allege that the issuance of all the summons by Stroud, Cornejo and Diep, and their accomplices were performed for the illegal purposes as previously described in Case No. SACV12-02100 JVC(MLGx), and Case No. SAVC13-00268 JVC(MLGx).   Petitioners assert that the issuance of the summons was only a continuance of the wrong doings that have been previously mentioned in those cases, and that there is no basis or probable cause for the violations of the Petitioners Ramirez and Pro Business Coach, Inc.'s Fourth Amendment rights for the following reasons.

74.  In the letter to Petitioner Ramirez dated May 14, 2012, **(Exhibit I)** IRS Agent Gail Kaipio stated, "we are determining whether you engaged any activity including the preparation of false returns and participation in tax avoidance transactions subject to penalties and injunctions under I.R.C. sections 6694, 6695, 6700, 6701, 7402, 7407 and 7408.  These IRS Codes do not apply to any activity that the Petitioner Ramirez has undertaken.

75. I.R.C. sections 6694 and 6695 deal with penalties on tax preparers who understate a taxpayer's liability.  Petitioner Ramirez is not a tax preparer, and never has been one.  He always has a CPA or an EA file his own taxes, and the taxes of any clients he might have.

76.  I.R.C. sections 6700 and 6701 deal with penalties involving "statements" made by a person who organizes an abusive tax shelter with

respect to the allowability of any deduction or credit. First of all, there is no proof that the Petitioner Ramirez made a "statement" regarding the allowability of any deduction or credit, and when Petitioner Ramirez asked the IRS for that proof none was forthcoming. Secondly, but most significantly, an "abusive tax shelter" is not defined anywhere in the entire Internal Revenue Code.

77. I.R.C. section 7402 deals with the jurisdiction of the U.S. District Court to enforce a summons and the general jurisdiction of the U.S. District Court with regards to actions involving the Internal Revenue Service. This is clearly a statement of jurisdiction, and not a basis for a cause of action against Petitioner Ramirez.

78. I.R.C. section 7407 deals with actions to enjoin a tax return preparer. This does not apply to Petitioner Ramirez because he is not a tax return preparer and never claimed to be one. Further, Petitioner Ramirez works almost exclusively with firms such as Channels and Channels to prepare tax returns.

79. I.R.C. section 7408 deals with the jurisdiction of the U.S. District Court to enjoin specified conduct. However, "specified conduct" is defined and related to penalties to be assessed for violations by tax preparers for understatements of tax liabilities and for persons making "statements" with respect to the allowability of any deduction or credit. This is clearly a statement of jurisdiction, and not a basis for a cause of action against Petitioner Ramirez.

80. Therefore, considering that the basis of the summons issued by

Cornejo is, pursuant to letters from the IRS (**Exhibits G & I**), I.R.C. sections 6694, 6695, 6700, 6701, 7402, 7407 and 7408, there is no basis or purpose for the summons because I.R.C. sections 6694, 6695, 6700, 6701, 7402, 7407 and 7408 do not apply to Petitioner Ramirez.

81.   There can be no doubt, considering the state of mind of Stroud, Cornejo, Diep and their accomplices, as indicated in conversations with EA Channels and Ramirez, that the use of the summons that have been issued were for the ulterior motive of attempting to intimidate a witness and retaliate against the witness and his related businesses for the purpose of keeping him from testifying on behalf of Christopher Holden, M.D. and his ex-wife.   When those efforts failed, they were also willing to, under color of federal authority, discredit   Petitioner   Ramirez's   testimony   at   trial,   which   they   did unsuccessfully attempt to do at the Tax Court Hearing for Dr. Holden held in December, 2013.   This act by Stroud and her accomplices, is no less than a willful and malicious attempt to tamper with a witness in a federal tax case in a clear violation of 18 USC § 1512.

82.   It is well-known by Agents Cornejo and Diep that the U.S. District Court's decision regarding the Petitioner's previous Motion to Quash Summons and *Bivens* complaint are presently in the hands of the Ninth Circuit Court of Appeals.   This has stopped their alleged investigative efforts and has frustrated their actions against the Petitioners at this time. This fact is well-known to the Petitioners, as a result of the conversations Cornejo has had with EA Channels, and those Ramirez had with Diep.   Filing summons to the same banking institutions over and over again is no less than a deliberate attempt to increase the cost of litigation, and is a retaliation for the Petitioner Ramirez's use of his legal rights.   This is pure and simply an act of retaliation since the

information Cornejo and Diep seek is already in the possession of the IRS. This act of retaliation is in violation of IRS Restructuring Act of 1998 Section 1203 that prohibits the retaliation of an IRS employee against a taxpayer under pain of termination.

### The Intentions Of The IRS Agents Are Betrayed By Their Actions And Conversations With EA Ronald J. Channels

83.   In conversations with EA Channels, Cornejo has indicated that she firmly believes Stroud's assertion that Petitioner Ramirez is the master mind behind a plot to deprive the United States of America of tax revenues by creating business entity organizations such as corporations, Limited Liability Companies, associations, and tax exempt entities.  However, Cornejo admitted to EA Channels that she had never been in business for herself, and does not know the difference between asset protection for purposes of protection from civil liabilities, and the establishment of tax shelters.   When EA Channels attempted to enlighten her as to the difference between tax evasion and establishing business entities to protect business assets, Cornejo did not appear to understand the difference.   At some time thereafter, it appears that Cornejo realized that her incompetence and ignorance about business operations would come into question since Stroud and Diep all work in the Small Business/Self-employed division of the Santa Ana IRS office.  Fearing the same outcome that Stroud was facing, Cornejo has sought to shift attention away from herself by involving IRS Agent Trinh Diep. **(See Exhibit K)**

84.   Trinh Diep, a recently hired IRS agent,  has been a willing scapegoat and accomplice for Stroud and Cornejo.  During the month of July

she began auditing any company or individual involved with Christopher Holden, M.D.   Diep and is currently investigating and auditing all of those companies and individuals associated with Christopher Holden that Stroud had previously placed under IRS scrutiny.   This includes the Petitioners Ramirez, Anderson and Pro Business Coach, Inc.   However, at her meeting with the Petitioner Ramirez, she admitted that she had never been in business for herself and does not know the difference between asset protection for purposes of protection from civil liabilities and the establishment of tax shelters.   When Petitioner Ramirez attempted to enlighten her as to the difference between tax evasion and establishing business entities to protect business assets, Diep told him that the difference was irrelevant.   Still, at the meeting, Diep was informed by Petitioner Ramirez how the IRS and its agents had been using the summons on the financial institutions affiliated with the Plaintiff and that the use of the summons in this case was an aspect of witness tampering, intimidation, and retaliation.

85.   The Petitioners are informed, believe, and on that belief allege that Diep is working in conspiracy and complicity with Stroud, either on her own or in conjunction with their respective supervisors, to inflict the same harm upon Petitioner Ramirez that Stroud and Cornejo have previously attempted.   It has quickly become apparent to her that in dealing with Petitioner Ramirez, that she lacks the knowledge and skills that would be required for someone working in the Small Business/Self-employed division of the Santa Ana IRS office.   By now Diep, realizes that she will also be called to task, just like Stroud and Cornejo, for her ignorance and incompetence in business matters.   Also, just like Stroud and Cornejo, her job will soon be in jeopardy.   Then just like Stroud and Cornejo, by issuing

summons on banking institutions previously summoned and currently the subject of two federal court actions, she has proven her willingness to continue violating the Plaintiff's Fourth Amendment rights and issue a summons for an improper purpose under color of federal authority. **(See Exhibit K)**

### The Issuance Of A Summons For An Illegal Purpose
### Is Also An Abuse Of Process

86. Petitioner Ramirez has information, is informed, believes and on that belief alleges that Stroud, Cornejo and Diep have obtained a vast amount of information regarding Ramirez, his business associates, his clients and his business entities so as to be fully informed regarding his activities and the activities of the various business entities he either operates or conducts business transactions based upon a recently received FOIA inquiry. They are also aware of the various bank accounts he holds at Union Bank and his relationship with that bank.

87. The issuance of a third party summons is an act authorized by statute and enforced through the courts. However, in this case, Stroud, Cornejo and Diep have used the court process to continually serve summons after summons on the same bank and bank accounts operated by the Petitioners for the ulterior motive of increasing the cost of the taxpayer's defense as well as vindictive harassment. In this case the issuance of the summons is collateral to the object of the process and has resulted in a perversion of the judicial purpose.

88. The resulting damage is suffered by the Petitioners, the Government, and the District Court as well. For each summons that is issued for an illegal purpose, the Petitioners must defend themselves and their property by having to file a motion to quash summons. A more insidious and ulterior purpose achieved by Stroud, Cornejo and Diep is that the Petitioners are constantly forced to spend time and money, that they can ill afford, to defend against their actions in court. The constant filing of summons to the same bank and involving the same person is obviously designed to increase the cost of litigation for the Claimant. Likewise, the District Court is then forced to use its limited resources to adjudicate the same issues over and over again.

89. Significantly, the actions of Stroud, Cornejo and Diep have been undertaken to inflict unjustifiable collateral damage to Petitioner Ramirez in order to damage to his reputation, as well as making him lose time and money. Typically, the person who abuses process is interested only in accomplishing some improper purpose that is collateral to the proper object of the process. For this reason the actions of Stroud, Cornejo and Diep, apart from the other causes of action herein asserted can also be interpreted as an abuse of process.

90. Further, if the IRS Agents used their powers of investigation, assessment and collection of taxes for the ulterior motive of retaliation, harassment and violations of 26 USC § 7609 (a)(1), and 18 USC § 1512, this can also be interpreted as an abuse of process. By its very definition, abuse of process is, "the improper and tortuous use of legitimately issued court process to obtain result that is either unlawful or beyond the process scope." See *Black's Law Dictionary* Ninth Edition (2009)

91.   However, to bring this definition to within the scope of the actions committed by the IRS Agents herein described, the Court should look at *Restatement (Second) of Torts* § 682 (1977) that states. "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed is subject to liability to the other for harm caused by the abuse of process."  This entire Petition has centered upon the actions of Stroud, Cornejo and Diep, their supervisors, and their accomplices who have, and continue to use their powers, particularly their power to issue summons, for an illegal purpose.  There can be no better example of abuse of process.

92.   Further, it is not only an abuse of process to issue a summons for an improper purpose, it is also a violation of the IRS Restructuring and Reform Act of 1998 in that the issuing IRS Agents who know that the summons is issued for an improper purpose are stating under oath that the summons is being issued for a proper purpose.  Such a willful representation by an IRS Agent is an action worthy of compensation to the taxpayer and the discharge of the IRS employee.

## Justification Of Damages

93.   The Petitioners have expressed their willingness to go to Tax Court to resolve the issue of the retaliatory audits that they have been subjected to. However, the damages each of these taxpayers will suffer would include, but are not be limited to; preparation of documents for each audit, preparation of documents for Tax Court, representation by an attorney, Tax Court filing fees, cost of paralegal document preparation, loss of income

during the process of preparing for and attending Tax Court, and perhaps even the cost for an appeal to the Ninth Circuit Court of Appeals, as well as all the fees, costs of preparing briefs, and mailing as may be required by that Court.

94.   Pursuant to the IRS Restructuring and Reform Act of 1998, a taxpayer can be paid up to $100,000.00 in damages for any violation of the IRS Code by an IRS Agent.   Besides the Petitioners, there are over 40 taxpayers that have been damaged by the retaliatory audits.   Additionally the firm of Channels and Channels, Inc. has suffered the loss of reputation and income as a result of the retaliatory audits.   Therefore, under these conditions, and considering that the damages are on going, the Petitioners will be seeking $100,000.00 in monetary damages per each retaliatory audit, at this time the estimate of the initial total is $900,000.00 - this amount is authorized by law.

95.   After the Tax Court hearing of Dr. Christopher Holden held on December 13, 2013, Dr. Holden, EA Channels and Ramirez spoke to IRS Attorney Miles Friedman about a global settlement.   They have had a conversation since that time in the hopes of putting an end to the endless litigation that will cost the Government and the Petitioners thousands of dollars.   Whereas, Mr. Friedman appeared open to further discussions, he did indicate that the decision would eventually be in the hands of the IRS, and that he was powerless to do more than urge his attorneys, the government, and the Petitioners to try and use good sense.

96.   To this end, the Petitioners have joined with other Claimants in filing an Administrative Claim with the Commissioner of the Internal Revenue Service, attached hereto, excluding exhibits, as **(Exhibit K)**.

# CONCLUSION

The issuance of a summons for an illegal purpose is a continuation of witness tapering that has been brought to the attention of the District Court in two previous actions. Significantly, <u>witness tampering is not an act that occurs in connection with any duty performed on behalf of the United States</u>.

There can be little doubt that the current summons to the Petitioners' financial institutions is another factor involved in a concerted effort of deliberately and willfully violating the Petitioners' constitutional rights for the purpose of covering up the incompetence of Stroud, Cornejo, and now Diep. The Petitioners have met the threshold of proof required to establish that Stroud had the state of mind and the motive to tamper with Petitioner Ramirez's testimony, so as to cover up her own incompetence, and that she used the power of her office to intimidate and harass them in violation of the IRS Restructuring and Reform Act of 1998.

The same can be said of Stroud's primary accomplice, Isabel Cornejo, who also has the state of mind and motive to cover up Stroud's incompetence, as well as her own lack of business knowledge, that is required for her own job. Obviously their supervisors have a vested interest maintaining the integrity of the IRS, at any cost, for fear of losing their own jobs.

If Petitioner Ramirez was actually guilty of the acts Stroud and Cornejo want to accuse him of, Stroud and Cornejo could have charged him with those accusations years ago since Petitioner Ramirez has been in business in Southern California since 1986. If Petitioner Ramirez was making a fortune selling Tax Shelters, and an audit revealed such a circumstance, he

would have been the subject of such an investigation as early as mid 2010. The fact that Stroud has waited until two months before trial is clear and convincing proof that there is no basis for the summons and that her intentions were to harass, intimidate and deprive him of his constitutional rights.

The involvement of IRS Agent Trinh Diep, in issuing a summons to banks she knew have already been summoned serves only to indicate the level of vindictiveness and conspiracy that the Santa Ana IRS office is willing to commit in order to cover up the incompetence and inefficiency of that office and its agents that is a clear abuse of process. This Court should keep in mind that all of these agents and their supervisors practice their trade at 801 W. Civic Center Dr., Ste. 200, Santa Ana, Ca. 92701. Thus, the issuance of multiple summons to the same financial institutions at different times for an illegal purpose that force an innocent victim to go to the time, trouble and expense of continually filing actions in federal court is not only reprehensible, but worthy of Rule 11 sanctions.

Significantly, the actions taken by Stroud, Cornejo, and now Diep and other auditors clearly indicates that the procedure of issuing summons for an illegal purpose is a system wide practice that is sanctioned by the Commissioner of the IRS in the same manner that he sanctioned the denial of Tea Party requests for 501(c)(3) status for their organizations.

WHEREFORE, Petitioners pray for judgment as follows:

1. That all Summons issued by the IRS on financial institutions affiliated with the Petitioner be quashed, and

2. That Beth E. Stroud, Trinh Diep, and Isabel Cornejo and any other IRS agent who participated with them have their employment terminated pursuant to the IRS Restructuring and Reform Act of 1998, and

3. For the Respondent to assume the costs of bringing this action, and other related actions to the District Court and Court of Appeals, and any other costs so ordered by the Court, and

4. For this Court to act as the judicial tribunal as indicated by the IRS Restructuring and Reform Act of 1998 and determine if the IRS Agents violated provisions of the IRS Restructuring and Reform Act of 1998.

5. Refer this matter to the U.S. Attorney General and the Inspector General for prosecution for witness tampering by Beth E. Stroud, Gail Kaipio, Isabel Conejo, Linda J. Petrillo, Trinh Diep, and any supervisor who authorized the summons and the investigation of the Petitioners, and

6. For all reasonable attorney fees incurred by the Petitioners for consultations paid involving this action and other related actions; and, if attorney representation becomes a reality in this case, for an award of all reasonable attorney fees involved in the adjudication of this and other related cases.

7. For all reasonable professional accounting fees incurred by the Petitioners for consultations and representations paid involving this action and other related actions in a total amount to be determined at trial, and

---

Petition To Quash Summons                40

8.  For the payment of paralegal fees in the amount of $200.00 per hour for preparation of all documents involved in this action and other related actions, in a total amount to be determined at trial, and

9.  For each of the Petitioners to be awarded $100,000.00 for each retaliatory audit that they have been subjected to, and

10.  Any other relief that the court finds reasonable and equitable.

Dated:  April 10, 2014          _John B. Ramirez_
                                John B. Ramirez
                                Petitioner In Pro Se

Dated:  April 10, 2014          _Juanda K. Anderson_
                                Juanda K. Anderson
                                Petitioner In Pro Se

Dated:  April 10, 2014          _John B. Ramirez_
                                John B. Ramirez
                                As Alter Ego Of
                                Pro Business Coach, Inc.
                                Petitioner In Pro Se

# Declaration of John B. Ramirez

I, John B. Ramirez aka Johnny Rhondo, declare:

I am the Petitioner in this action. I am still the key witness in the U.S. Tax Court No. 14915-11 and a named witness in several Tax Court cases yet to come to trial. My full name, pursuant to Hispanic cultural traditions is John Baptist Ramirez y Castro y Perez y Rhondo. As an actor member of SAG/AFTRA and writer, director and producer, I am also known as Johnny Rhondo in the entertainment industry. I am the Founder of the Church of the Revelation, a Gnostic 26 U.S. § 501(c)(3) religious organization that has been in existence since 1978. In the Church of the Revelation I am known as Rev. John Ramirez Rhondo. Since the attainment of good health is a Gnostic religious principle, I have worked for many years with health care providers and aided their efforts in research and development. Even though I am a Gnostic minister, for the majority of my working life I have worked as a consultant for business organizations and operations. I have been in business in Southern California since 1986, and I currently reside in the city of Orange, in Orange County California. I am also the named responsible person for the disposition of assets and liabilities of the dissolved California Corporation Pro Business Coach, Inc. **(Exhibit F)**

This declaration is made in support of this Petition to Quash the third party summons issued by the Internal Revenue Service to third party financial institutions. The facts stated in this declaration are within my personal knowledge, and if called on as a witness, I could competently testify thereto.

I was personally served with a copy of a Summons to Union Bank and

BBCN Bank requesting them to produce certain documents, information and bank account records belonging to me, on or about April 3, 2014. I accepted service of a copy of a Summons to Union Bank requesting them to produce certain documents, information and bank account records belonging to Pro Business Coach, Inc., on or about April 3, 2014. I know that Juanda K. Anderson was served with a copy of a Summons to Union Bank and American Express requesting them to produce certain documents, information and bank account records belonging to her, on or about April 3, 2014.

I have a long and well-documented history of always timely filing my income taxes, and there has never been any evidence to the contrary. Until the year 2012, I have never been audited, or have been the subject of inquiry by the IRS for any violations of the tax code.

Christopher Holden, M.D. and his ex-wife Karen Holden, were audited by IRS Agent Beth E. Stroud for the year 2007, but currently that audit has been expanded to include the year 2008, 2009, 2010 and 2011. All actions taken by the IRS against me and violations of my constitutional rights are directly related to the audits conducted by Beth E. Stroud on Christopher Holden, M.D. and his ex-wife Karen Holden.

I have been active in the medical community of Southern California since 1988. Due to my interest in alternative medical therapies and traditional medicine I was introduced to many medical practitioners who shared my interests, and I used my organizational skills to develop organizations that would allow physicians and patients to formulate mutually beneficial treatment plans free of interference from Medical Boards who oppose

chelation therapy, and Dental Boards who still advocate amalgam as the standard of care for teeth filings. Due to my efforts, chelation therapy is now accepted in the State of California as a treatment of cardio-vascular disease, and amalgam is no longer considered the only substance that can be used for the filling of teeth.

I began working with Christopher Holden, M.D. on or about August 2004. At first I began working with him to resolve a problem with Medicare, and later worked as a consultant for his practice to develop a medical delivery system that would support alternative medical therapies. This is a function that I still perform to this day.

The medical practice of Christopher Holden has been plagued with a variety of disasters which include three major floods of his offices, the withholding of Medicare funds on two occasions, the closure of his second practice location, mounting debt, betrayal of key employees, and a divorce that led to his declaring Chapter 7 personal bankruptcy in 2009.

In 2010, I know that Christopher Holden became aware that he and his ex-wife were being audited by IRS Agent Beth E. Stroud for the tax year 2007. Christopher Holden contacted the firm of Channels and Channels, Inc. for representation.

At this time I do not know exactly how much time, effort, and the government's money Beth E. Stroud invested in trying to make the case that Dr. Holden was evading taxes. However, considering that she requested records from banks and used summons to obtain information from hospitals,

Medicare, private individuals, and his associates, I have estimated the amount of the government's money she expended should be over $100,000.00.

During the audit process for the tax year 2007, Stroud showed signs of becoming "personally" involved in the audit, and when she learned that Ron Channels, who had previously showed how inefficient and arbitrary her audit practices were in a previous audit of one of his clients, would be representing Christopher Holden and his ex-wife.

During the audit process for the tax year 2007, Stroud became frustrated in her attempts to have other persons provide information that she could use against Christopher Holden. When she discovered that persons such as Jane Garcia, and Dr. Anjana Sura would not give her the information she wanted in the manner that would prove her case, she retaliated against them by auditing them and issuing notices of deficiency to them. Stroud was further angered when she realized that these parties were also represented by the firm of Channels and Channels, Inc. who currently represents them in audits and in the filing of two U.S. Tax Court cases.

I have personal knowledge that during the audit process, Beth E. Stroud had many conversations with EA Ronald J. Channels. During those conversations, she indicated that she was absolutely certain that Christopher Holden was guilty of tax evasion and that the information she gathered proved that fact, and that other persons, particularly myself, were involved in the tax evasion scheme. She also indicated to EA Channels on several occasions that she was being pressured by her superiors to bring the Holden case to a close with a charge of tax evasion by any means possible.

---

As the audit proceeded, and many missing items and information were recovered by Channels and Channels, Inc. as a result of a FOIA action, Beth E. Stroud became aware that John B. Ramirez possessed vital information that could possibly exonerate Christopher Holden from any tax liability.

On March 28, 2011, Beth E, Stroud issued a Notice of Deficiency to Christopher Holden and his ex-wife. Christopher Holden and his ex-wife timely filed a Petition in the U.S. Tax Court.

After the Petition in the U.S. Tax Court was filed, Beth E. Stroud informed Ron Channels that she has never had any other audits challenged in the U.S. Tax Court and that she was holding John B. Ramirez personally responsible for this stain on her record since she now knew that he had been the practice manager for Christopher Holden for many years.

Beth E. Stroud issued statements of deficiency to Jane Garcia, Dr. Holden's ex-office manager, and Dr. Anjana S. Sura, an associate of Dr. Holden's.  Both Jane Garcia and Dr. Sura have filed tax court petitions currently in the U.S. Tax Court.

I have personal knowledge that Beth E. Stroud informed EA Channels that she might lose her job, and that to prevent this from happening, her supervisors were pulling off any future actions against Garcia, Sura and Holden.

I have personal knowledge that Christopher Holden, M.D. and his ex-wife Karen Holden timely filed a petition with the U.S. Tax Court for the year

2007, and that petition was issued the Case No. 14915-11.  They have also each individually filed another tax court petition for they year 2008.

As the date drew closer for the Tax Court Hearing of Christopher and Karen Holden for the year 2007, Case No. 14915-11, the witnesses for that case had to be disclosed prior to the 30 day Meet and Confer meeting held prior to the commencement of the Tax Court Hearing.  Beth E. Stroud became informed that I was on the witness list, and that I would be attending the Meet and Confer Meeting.  Beth E. Stroud was informed by EA Channels that I would be introducing facts that would be very detrimental for the case she was trying to make against the Holdens. Beth E. Stroud indicated to EA Channels that she feared that I might reveal information that would cause her to appear incompetent at the Meet and Confer meeting that had been scheduled for May 3, 2011.

The IRS attorney assigned to the case, Sandy Hwang, insisted that if I were to be in attendance at the Meet and Confer meeting that I should provide a Form 8821 prior to that meeting.

Just prior to the Meet and Confer meeting I submitted a form 8821 and later received a CAF number.

Though dated by hand 4/18/2012, I did not receive the letter from Linda J. Petrillo until May 1, 2012, that informed me that I was being investigated for establishing abusive tax shelters. **(Exhibit G)**

I know that this was a deliberate attempt, orchestrated by Beth E.

Stroud, to prevent me from attending the meeting on May 3, 2012 (that was later cancelled). However, I did respond by certified mail on May 3, 2012 requesting a clarification of the 4/18/2012 letter. **(Exhibit H)**

On or about May 14, 2012, I received another letter from the IRS in response to his letter of May 3, 2012, but this time from Gail Kaipio. **(Exhibit I)**

I responded by certified mail again asking for a clarification of the documents requested. **(Exhibit J)** Just as in the case before, there was no response regarding a clarification of the documents requested. Significantly, whenever I asked for something specific in writing from her, I never received it.

At the Meet and Confer meeting held prior to the original court date of June 16, 2012, there were in attendance, EA Ronald J. Channels, Atty. Walter Channels, Beth E. Stroud, Atty. Sandy Hwang, and myself. It was at that time that Beth E. Stroud's discovered that I possessed all the information that would ruin her entire case against Christopher Holden. Moreover, at that meeting it became apparent to her and IRS Attorney Hwang that her case against Christopher Holden, M.D. would be unjustified as a result of the combination of verifiable accounting records supplied by EA Channels and its substantiation by my testimony.

I know that Beth E. Stroud knew she had to increase her efforts of intimidation in order to keep me from testifying and destroying her case. I also believe that if intimidation proved unsuccessful, she was bent on destroying my character and reputation so that the U.S. Tax Court would

discount my testimony as being unreliable.

In an effort to destroy my reputation, Beth E. Stroud has and continues to intentionally misrepresent my actions to the IRS and her colleagues in order to cover up her incompetent audit and investigative work, so as to justify an extraordinary expenditure on behalf of the government that will have a negative result on the IRS's collections, and to save her job.

It know that Beth E. Stroud began working with Isabel Cornejo in order to tamper with a witness in a federal proceeding under color of federal authority, and with the specific intent of violating my Fourth Amendment rights, and undertaking actions of retaliation against me for appearing to invoke my Fifth Amendment rights against unfounded accusations of creating tax shelter and filing taxes for my clients.

I also know that Beth E. Stroud began working with Isabel Cornejo in order to tamper with a witness in a federal proceeding under color of federal authority and with the specific intent of violating my Fourth Amendment rights and undertaking actions of retaliation against me for my appearance of invoking my Fifth Amendment rights against unfounded accusations of creating tax shelter and filing taxes for his clients. I believe that these actions have been undertaken with the approval of their respective supervisors, who both Stroud and Cornejo refuse to name, and who have worked in conspiracy with Cornejo and Stroud to preserve the reputation of the IRS by covering up the incompetence of both Cornejo and Stroud under color of federal authority.

I know that both Cornejo and Stroud intended to tamper with me, a

witness in a federal tax case, in violation of 18 USC § 1512 for the specific purpose of covering up their own incompetence. At the present time, the U.S. Tax Court has been informed about the witness tampering actions undertaken by Stroud and Cornejo, but has decided not to hear the matter.

During the requisite Meet and Confer meeting held 30 days prior to the commencement of the hearing scheduled for June 18, 2012, I have personal knowledge that it was decided by the representatives of Christopher Holden, M.D. and his ex-wife Karen Holden, and the IRS to consolidate the tax years 2008 with 2007 for the purpose of judicial economy. However, since that time the U.S. Tax Court has decided to rescind the consolidation and is now hearing these actions separately. A new trial date for 2008 is still pending.

Beth E. Stroud's misrepresentations resulted in issuance of the summons to my bank (Union Bank). Whereas, I know that she will find nothing there, this very act, without any substantiation, will cause great harm to my reputation with the bank and the community. As a religious leader, such an attack is devastating whether it is justified or not.

After the summons to Union banks was issued, I timely filed a Motion to Quash Summons that was later denied, but which is now under appeal to the Ninth Circuit Court of Appeals.

On or about mid October, 2012, IRS Agent Isabel Cornejo contacted the accountancy and law firm of Channels and Channels, Inc. and requested them to divulge information regarding their relationship with me and any

Declaration of John B. Ramirez                    9

clients we have in common.  Since Ronald J. Channels is an Enrolled Agent and Walter Channels is an attorney, they fall under the terms of the Tax Reform Act of 1976 that requires notification to the taxpayer that third party record keepers are being summoned by the IRS.  IRS Agent Isabel Cornejo failed to inform me of the information she sought from third parties in violation of 26 USC § 7609 (a).  **(Exhibit K)**

The issuance of the second summons to Bank of America is a deliberate act of retaliation by IRS Agent Isabel Cornejo who did not expect that I would appeal the decision of the U.S. District Court.  The issuance of this summons is not meant to result in any information that is not already in the hands of the IRS, but only to prevent any inquiry as to the competence of both Cornejo and Stroud, and attempt to discredit my testimony at the upcoming U.S. Tax Court hearing. The issuance of the second summons prompted me to file a petition to quash summons on or about December 4, 2012, and at that time is was issued the case number SACV12-02100 DOC(MLGx) that has now been changed to SACV12-02100 JVS(RNBx).

At the present time, sufficient information has been provided to the IRS attorney in the matter of the 2007 Tax Court hearing Case No. 14915-11, to indicate that the 2007 tax return filed by Christopher and Karen Holden is correct and there will be no tax liability for them that year.

I first received a Notice of Audit From IRS Agent Trinh Diep dated July 10, 2012, and I made an appointment to meet her in the month of August. At this meeting, a man identifying himself to be Mayank Patel attended the meeting claiming he was her supervisor, but this fact has never been verified. At this meeting, I informed Diep about **all** of the actions Stroud and Cornejo

had taken and my response to those actions in great detail.   I also informed her of the constitutional violations, retaliation, witness tampering and the improper use of the summons by Stroud and Cornejo.  At that meeting IRS Agent Trinh Diep was also informed that Pro Business Coach, Inc. would be dissolved at the end of 2012 and that I would be the last person responsible for the liabilities of the corporation.  The meeting ended after we agreed to meet again in September, but I informed Diep that I wanted to discuss any further cooperation with the firm of Channels and Channels prior to any future meeting.

Obviously, the issuance of the second summons to Bank of America was an act of retaliation by IRS Agent Isabel Cornejo who did not expect me to appeal the decision of the U.S. District Court. I also know that the issuance of this summons will not result in any information that is not already in the hands of the IRS, but is rather an act of retaliation designed to prevent any inquiry into the competence of both Cornejo and Stroud, and an attempt to discredit my testimony at the upcoming U.S. Tax Court hearing.

On December 14, 2012, IRS Agent Trinh Diep issued a summons to Union Bank of California, and Bank of America just as Cornejo had previously done and which is the subject of the initial Petition to Quash Summons in this case.  The only difference is that Diep also added USAA Saving Bank.

I know that Defendant Diep issued her summons to Union Bank on Pro Business Coach, Inc., after becoming fully aware of the legal proceedings against her brought on by myself, and for the purpose of causing me financial harm.  Further, it has come to my attention that Defendant Diep issued another

summons on Union Bank for the Wegener Family Trust, of which I am the trustee, without contacting me first by certified mail, as is required by law, and during a time that Stroud, Cornejo and Diep knew that I would be out of the country and would have no knowledge of the service of the summons. Further, it has also come to my attention that Diep also issued an additional 8 summons to Union bank without notifying me as required by law.

I know that that since Cornejo, Stroud and Diep all work out of the very same IRS office located in Santa Ana, California, that they have conspired to violate my Fourth Amendment rights, to include but does not seem limited to, witnesses tampering, harassment, and retaliation without any substantiation, and for the purpose of preventing the discovery of Beth E. Stroud's inefficiency and incompetence and all performed under color of federal authority.

I work closely with the firm of Channels and Channels, Inc. since they and I share several clients. Since October 2012, I have observed that many of our clients have received what we know to be retaliatory audits. We have also observed certain audit patterns that are obviously sanctioned by the Commissioner of the Internal Revenue Service. (**Exhibit K**)

I have observed that the source of the audit actions and procedures by the IRS Agents are the result of policies and procedures that began in the Santa Ana, California office as promulgated by Stroud, Cornejo and Diep, and later spread to other IRS offices located in San Diego, Laguna Niguel and San Bernardino. Other IRS Agents and supervisors have worked in consort with Stroud, Cornejo and Diep in an effort to draw attention away from the wrong

doings of these IRS Agents.  The violations are the result of the lack of training, lack of understanding business operations in general, ignorance of what is required to operate a business, ignorance of the law, as well as negligence and incompetence.  The IRS auditors and supervisors that have acted in complicity with Stroud, Cornejo and Diep are:  Christopher Hall, Jennifer Parsons, Joanna Gutierrez, Catherine H. Martinez, Maria Ramirez, Mary Linan, Annie Tran, Lindy Liu, Mayank H. Patel, David Cho, Joseph Creede, Hung Pham. Hector Rivera, Brian McDonough, and Andrew K. Hong.   After being involved with a multitude of audits and Tax Court preparations, a pattern of audit abuse has emerged that indicates a methodology employed by the IRS employees that is seen across the Southern California Region that appears to be practiced on a large scale to indicate a program of intentional constitutional violations sanctioned by the IRS as a whole when auditing a small business and individuals.  They are as follows:

      a.  All audits begin with a demanding tone by the agents that indicate to a taxpayer that if cooperation is not forthcoming then criminal charges will be filed.

      b.  If the small business is incorporated or works as a partnership, IRS Agents consider any business organization to be an abusive tax shelter.

      c.  It is typical in an audit of a business organization, or an individual, for the IRS to disregard all business deductions and pass all the business's tax liabilities to the individual taxpayer.

d.  IRS Agents attribute all money in a business bank account to be income even if personal capital or loans are deposited in order to keep the business  viable.

e.   The vast majority of IRS agents have never owned or operated a business and cannot or prefer not to understand the meaning of a legitimate business deduction.

f.  When an IRS agent is attempting to serve documents to a taxpayer they do not adhere to the laws of service of process of the state in which they operate in violation of the Erie Doctrine.  Service documents are taped to a door in windy weather, placed on doorsteps when no one is present, send certified mail without a return receipt to prove that the document was actually  delivered, throw  documents  in the back yard or attach them to a fence, drop them on the floor of a place of business, attempt a third party service without also sending the requisite mailing, or give them to a neighbor to deliver.  This practice often results in a privacy violation to the recipient.

g.  IRS agents are blatant in their violations since they feel that their  immunity will protect them and are very vocal about this to tax professionals.  Taped interviews with IRS auditors are available upon request.

h.   It is a well-known fact that a tax audit can cost from $5,000.00 to $25,000.00 and up to $50,000.00 if a taxpayer decides to go to Tax Court.   Thus, it has become very common for IRS Agents

to open a series of audits on a single taxpayer under their own authority in order to place a financial burden on the taxpayer that is so heavy that the taxpayer is forced to close his business, agree to unfavorable terms due to financial expediency, declare bankruptcy, or give up an join an underground economy.

i. In line with (h) above, IRS Agents abuse the power of their office by demanding records to be constructed in the manner that they dictate, regardless as to whether or not such reconstruction is reasonable or logical.    This becomes very costly for the taxpayer. Then if the IRS Agent is not satisfied with the organization of documents, the Agent will disallow legitimate deductions.

j.    The Southern California IRS offices almost always invariably deny all requests to move an audit to another location when a taxpayer makes such a request in spite of the fact that tax records or the taxpayer's tax preparer lives in another state or county. The IRS intentionally undertakes this action because it will increase the cost of an audit to the taxpayer such that he would be forced to capitulate to unfavorable conditions.

k.  IRS Agents often apply their own personal arbitrary and capricious feelings to determine a tax liability rather than applying the IRS Code in order to harass the taxpayer and increase the cost of an audit.

l. IRS Agents apply a more stringent burden of proof on the taxpayer than the law requires harassing the taxpayer and increasing

the cost of an audit.  However, this tactic more often than not, creates the necessity for the taxpayer to petition the Tax Court in order to obtain a fair ruling regarding the acceptance of tax deductions.

      m.   However, the most egregious of the IRS actions is the constant practice of employing retaliatory audits on a taxpayer, his/her tax preparer, and the preparer's associates and or employees. Along with this practice is the   constant     harassment     frequently employed under the color of federal authority. **(See Exhibit K)**

      I have recently filed an initial Administrative Claim **(Exhibit K)** with the Commissioner of the Internal Revenue Service, in order to preserve the statute, in which all of the above issues have been addressed.  I am working with EA Channels to file a more extensive Administrative Claim, including all of the audits filed against all of his clients, will be filed on behalf of his clients within 45 days.

      I declare under penalty of perjury that the foregoing is true and correct. Dated on April 10, 2014 at Orange, California.

John B. Ramirez

_____
John B. Ramirez

# EXHIBIT A

# Summons

In the matter of  JUANDA K ANDERSON

Internal Revenue Service (Division):  SB/SE

Industry/Area (name or number):  CAA

Periods:  Calendar Year 2011 and Calendar Year 2012  -  January 1, 2011 through December 31, 2012

## The Commissioner of Internal Revenue

To:  Union Bank of California    Attn: Legal Processing Department

At:  1980 Saturn Street, Monterey Park, CA 91755

You are hereby summoned and required to appear before  Trinh Diep - Employee # 1000255644 or Designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See Summons Attachment

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear:**

801 W. Civic Center Drive, MS 4206 Suite 200, Santa Ana, CA  92701-4050        (714) 347-9350

**Place and time for appearance at**  801 W. Civic Center Drive,  Suite 200, Santa Ana, CA  92701-4050

# IRS

Department of the Treasury
**Internal Revenue Service**
**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

on the  1st  day of  May  2014  at  9:00  o'clock  a.  m.
(year)
Issued under authority of the Internal Revenue Code this  1st  day of  April  ,  2014
(year)                                                                                          (year)

Signature of issuing officer                                    Revenue Agent
                                                                                         Title

Signature of approving officer (if applicable)              Group Manager
                                                                                         Title

**Part C** — to be given to noticee

EXH A

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON (SSN:  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)

Issued to:     Union Bank of California
Period(s):     January 1, 2011 through December 31, 2012

**THE FOLLOWING REQUEST APPLIES TO ALL SPECIFIED AND UNSPECIFIED
ACCOUNTS FOR WHICH THE ABOVE INDIVIDUAL IS LISTED
AS A SIGNER OR BENEFICIARY.**

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as having any ownership interests, signatory privileges, rights to make withdrawals, or for which the above-named individual(s) is shown as the trustee, co-signer, guardian, custodian, or beneficiary.  This request for records includes, but is not limited to:

1.  **CHECKING ACCOUNT RECORDS** including signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records of all debit and credit memos, Forms 1099 issued, and exempt status documentation.
2.
3.  **PRIVATE BANKING** including all agreements, contracts, records, books, ledgers, and other documents relating to all of the "Private Banking" agreements and relationships.

4.  **SAVINGS ACCOUNT RECORDS** including signature cards, ledger cards or records showing dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, and checks issued for withdrawals, Forms 1099 issued, and exempt status documentation.

5.  **LOAN RECORDS** including applications, financial statements, loan collateral, credit, and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records showing the date, amount and method of repayment, checks used to repay loans and records showing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda, ***regardless of date.***

6.  **SAFE DEPOSIT BOX RECORDS** including contracts, access records, and records of rental fees paid showing the date, amount, and method of payment (cash or check)

7.  **CERTIFICATES OF DEPOSIT, MONEY MARKET CERTIFICATES, AND RETIREMENT ACCOUNTS** including applications, actual instruments(s), records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, any correspondence and any Forms 1099 issued, records showing the annual interest paid or accumulated, the dates of payment or dates interest was earned, checks issued for interest payments.

**PLEASE RESPOND TO THIS REQUEST BY:  May 1, 2014**

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON (SSN: 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)

8. **U.S. TREASURY NOTES AND BILLS** including all records of the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, records of interest paid or accumulated showing the dates and amount of interest paid or accumulated.

9. **STOCKS AND BONDS** including all agreements, contracts, applications for account, signature cards, mutual fund accounts, commodity accounts, margin accounts, or other accounts. Such records include cash receipts, confirmation slips, securities delivered receipts, statements of account, notifications of purchase or sale, representative's stock record, account executive worksheets, correspondence, ledger sheets, cash in slips, buy and sell slips, or other records of these transactions. Documentation and correspondence about stock, municipal or corporate bond transactions, and financial counseling on any of the above.

10. **CREDIT CARD RECORDS** including the above named individual(s)' application, signature card, any credit or background investigations conducted, correspondence about the credit card accounts, monthly billing statements, individual charge invoices, repayment records showing the dates, amounts, and method (cash or check) of repayment, checks used to make repayments (front and back).

11. **PURCHASES OF BANK CHECKS** including cashier's, teller's, or traveler's check records, or money order records including the check register, file copies of the checks or money orders, records showing the date and source of payment for such checks or money orders.

12. **OTHER RECORDS** including records of Currency Transaction Reports (Form 4789), certified checks, wire transfers, or collections, letters of credit, bonds and securities purchased through your bank, savings bond transactions and investment accounts. Such records include those that show the date and amount of the transaction, method (cash or check) and source of payment, destination, recipient, instruments, and statements of transactions.

**Personal appearance is not necessary if the required records are received by mail by the date specified in the summons. A cover letter is required which outlines the information and records provided.**

RECORD FORMAT: In lieu of hard copies, records requested can be provided in the form of magnetic media on either compact disk or 3 ½-inch diskette, whenever available. A record layout for the data is also requested. The record layout should specify the type of information provided and actual electronic file name. Each type of information should be

**PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014**

Page 2

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

## SUMMONS  ATTACHMENT

In the matter of: JUANDA K ANDERSON (SSN:  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)

recorded in a separate document; however, multiple dates may be included in the same file.  The record layout should be placed in the same order as the information listed above. **Also, please note that duplicate records should not be provided.  If records are already included in the form of magnetic media** (compact disk or 3 ½-inch diskette), **do not send duplicate hard copies because the hard copies will not be reimbursed.**

**PLEASE RESPOND TO THIS REQUEST BY:  May 1, 2014**

Page 3



April 8, 2014

Society for International Prosperity
1442 E. Lincoln Ave. Ste 352
Orange, CA  92865-0000

Re:     Summons Internal Revenue Service

Dear Customer:

On April 3, 2014, the Internal Revenue Service served a Summons on Union Bank, N.A. We have enclosed a copy of the Summons for your reference. The Bank is required to comply with the Summons and will do so 3 business days prior to May 1, 2014.

If you wish to stop the Bank from complying with the Summons, you must follow the procedure of quashing a Summons outlined by the Internal Revenue Service on the Summons itself.

Please note that we must disregard instructions not to comply with the Summons unless you deliver to the Legal Process Department at least 3 business days prior to the production date, a copy of a petition to quash the Summons, endorsed to show that it has been filed with United States District Court.

If you have questions concerning the procedure to quash the Summons, we suggest you contact your attorney.

Should you have any questions, please contact me at 323-278-4770.

Sincerely,


Macaria Martinez
Union Bank, N.A.
Legal Process Department


Ref# S1404035

Legal Process Department
P.O. Box 30240
Los Angeles, CA 90030
A member of MUFG, a global financial group

Tel. 323 278 4770

NTCIRS  V1.0

1404035



# Summons

LEGAL

In the matter of  JUANDA K ANDERSON

Internal Revenue Service (Division):  SB/SE   100820   2014-
Industry/Area (name or number):  CAA

Periods: Calendar Year 2011 and Calendar Year 2012  -  January 1, 2011 through December 31, 2012

## The Commissioner of Internal Revenue

To:  Union Bank of California      Attn: Legal Processing Department

At:  1980 Saturn Street, Monterey Park, CA 91755

You are hereby summoned and required to appear before  Trinh Diep - Employee # 1000255644 or Designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers,
and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the
administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See Summons Attachment

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original
and that it is a true and correct copy of the original.

_____          Revenue Agent
Signature of IRS officer serving the summons              Title

**Business address and telephone number of IRS officer before whom you are to appear:**

801 W. Civic Center Drive, MS 4206 Suite 200, Santa Ana, CA  92701-4050        (714) 347-9350

Place and time for appearance at   801 W. Civic Center Drive,  Suite 200, Santa Ana, CA  92701-4050

## IRS

Department of the Treasury
Internal Revenue Service
www.irs.gov

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

on the     1st     day of     May     , 2014   at   9:00   o'clock   a.   m.
                                              (year)
Issued under authority of the Internal Revenue Code this  1st  day of     April     , 2014
                                                          (year)

_____          Revenue Agent
Signature of issuing officer                              Title

_____          Group Manager
Signature of approving officer (if applicable)              Title

Part A - to be given to person summoned

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ▓▓▓▓▓▓▓▓▓▓

Issued to:    Union Bank of California
Period(s):    January 1, 2011 through December 31, 2012

### THE FOLLOWING REQUEST APPLIES TO ALL SPECIFIED AND UNSPECIFIED ACCOUNTS FOR WHICH THE ABOVE INDIVIDUAL IS LISTED AS A SIGNER OR BENEFICIARY.

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as having any ownership interests, signatory privileges, rights to make withdrawals, or for which the above-named individual(s) is shown as the trustee, co-signer, guardian, custodian, or beneficiary. This request for records includes, but is not limited to:

1. **CHECKING ACCOUNT RECORDS** including signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records of all debit and credit memos, Forms 1099 issued, and exempt status documentation.

2.

3. **PRIVATE BANKING** including all agreements, contracts, records, books, ledgers, and other documents relating to all of the "Private Banking" agreements and relationships.

4. **SAVINGS ACCOUNT RECORDS** including signature cards, ledger cards or records showing dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, and checks issued for withdrawals, Forms 1099 issued, and exempt status documentation.

5. **LOAN RECORDS** including applications, financial statements, loan collateral, credit, and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records showing the date, amount and method of repayment, checks used to repay loans and records showing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda, *regardless of date.*

6. **SAFE DEPOSIT BOX RECORDS** including contracts, access records, and records of rental fees paid showing the date, amount, and method of payment (cash or check)

7. **CERTIFICATES OF DEPOSIT, MONEY MARKET CERTIFICATES, AND RETIREMENT ACCOUNTS** including applications, actual instruments(s), records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, any correspondence and any Forms 1099 issued, records showing the annual interest paid or accumulated, the dates of payment or dates interest was earned, checks issued for interest payments.

### PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014

Page 1

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ▓▓▓▓▓▓▓▓▓▓▓▓

8. **U.S. TREASURY NOTES AND BILLS** including all records of the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, records of interest paid or accumulated showing the dates and amount of interest paid or accumulated.

9. **STOCKS AND BONDS** including all agreements, contracts, applications for account, signature cards, mutual fund accounts, commodity accounts, margin accounts, or other accounts. Such records include cash receipts, confirmation slips, securities delivered receipts, statements of account, notifications of purchase or sale, representative's stock record, account executive worksheets, correspondence, ledger sheets, cash in slips, buy and sell slips, or other records of these transactions. Documentation and correspondence about stock, municipal or corporate bond transactions, and financial counseling on any of the above.

10. **CREDIT CARD RECORDS** including the above named individual(s)' application, signature card, any credit or background investigations conducted, correspondence about the credit card accounts, monthly billing statements, individual charge invoices, repayment records showing the dates, amounts, and method (cash or check) of repayment, checks used to make repayments (front and back).

11. **PURCHASES OF BANK CHECKS** including cashier's, teller's, or traveler's check records, or money order records including the check register, file copies of the checks or money orders, records showing the date and source of payment for such checks or money orders.

12. **OTHER RECORDS** including records of Currency Transaction Reports (Form 4789), certified checks, wire transfers, or collections, letters of credit, bonds and securities purchased through your bank, savings bond transactions and investment accounts. Such records include those that show the date and amount of the transaction, method (cash or check) and source of payment, destination, recipient, instruments, and statements of transactions.

**Personal appearance is not necessary if the required records are received by mail by the date specified in the summons. A cover letter is required which outlines the information and records provided.**

**RECORD FORMAT:** In lieu of hard copies, records requested can be provided in the form of magnetic media on either compact disk or 3 ½-inch diskette, whenever available. A record layout for the data is also requested. The record layout should specify the type of information provided and actual electronic file name. Each type of information should be

## PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014

Page 2

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ████████████

recorded in a separate document; however, multiple dates may be included in the same file. The record layout should be placed in the same order as the information listed above. Also, please note that duplicate records should not be provided. If records are already included in the form of magnetic media (compact disk or 3 ½-inch diskette), do not send duplicate hard copies because the hard copies will not be reimbursed.

**PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014**

Page 3

 **Union**Bank

April 8, 2014

Pro Business Coach, Inc.
1442 E. Lincoln Ave. Ste 352
Orange, CA  92865-0000

Re:     Summons Internal Revenue Service

Dear Customer:

On April 3, 2014, the Internal Revenue Service served a Summons on Union Bank, N.A. We have
enclosed a copy of the Summons for your reference. The Bank is required to comply with the Summons
and will do so 3 business days prior to May 1, 2014.

If you wish to stop the Bank from complying with the Summons, you must follow the procedure of
quashing a Summons outlined by the Internal Revenue Service on the Summons itself.

Please note that we must disregard instructions not to comply with the Summons unless you deliver to
the Legal Process Department at least 3 business days prior to the production date, a copy of a petition to
quash the Summons, endorsed to show that it has been filed with United States District Court.

If you have questions concerning the procedure to quash the Summons, we suggest you contact your
attorney.

Should you have any questions, please contact me at 323-278-4770.

Sincerely,


Macaria Martinez
Union Bank, N.A.
Legal Process Department


Ref# S1404035


Legal Process Department                    Tel. 323 278 4770
P.O. Box 30240
Los Angeles, CA 90030                                                              NTCIRS V1.0
A member of MUFG, a global financial group

1404035



# Summons

LEGAL

In the matter of  JUANDA K ANDERSON

Internal Revenue Service (Division):  SB/SE    I 0 0 8 2 0              2 0 1 4 7

Industry/Area (name or number):  CAA

Periods: Calendar Year 2011 and Calendar Year 2012  -  January 1, 2011 through December 31, 2012

## The Commissioner of Internal Revenue

To:  Union Bank of California       Attn: Legal Processing Department

At:  1980 Saturn Street, Monterey Park, CA 91755

You are hereby summoned and required to appear before  Trinh Diep - Employee # 1000255644 or Designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers,
and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the
administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See Summons Attachment

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original
and that it is a true and correct copy of the original.

_____          Revenue Agent
Signature of IRS officer serving the summons              Title

**Business address and telephone number of IRS officer before whom you are to appear:**

801 W. Civic Center Drive, MS 4206 Suite 200, Santa Ana, CA  92701-4050          (714) 347-9350

Place and time for appearance at  801 W. Civic Center Drive,  Suite 200, Santa Ana, CA  92701-4050

**IRS**

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

on the ____1st____ day of ____May____, ____2014____ at ____9:00____ o'clock ___a.___ m.
                                                        (year)
Issued under authority of the Internal Revenue Code this __1st__ day of ____April____ , ____2014____
                                                                                        (year)

_____          Revenue Agent
Signature of issuing officer                    Title

_____          Group Manager
Signature of approving officer (if applicable)          Title

Part A - to be given to person summoned

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ████████████

Issued to:     Union Bank of California
Period(s):     January 1, 2011 through December 31, 2012

### THE FOLLOWING REQUEST APPLIES TO ALL SPECIFIED AND UNSPECIFIED ACCOUNTS FOR WHICH THE ABOVE INDIVIDUAL IS LISTED AS A SIGNER OR BENEFICIARY.

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as having any ownership interests, signatory privileges, rights to make withdrawals, or for which the above-named individual(s) is shown as the trustee, co-signer, guardian, custodian, or beneficiary.  This request for records includes, but is not limited to:

1. **CHECKING ACCOUNT RECORDS** including signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records of all debit and credit memos, Forms 1099 issued, and exempt status documentation.

2.

3. **PRIVATE BANKING** including all agreements, contracts, records, books, ledgers, and other documents relating to all of the "Private Banking" agreements and relationships.

4. **SAVINGS ACCOUNT RECORDS** including signature cards, ledger cards or records showing dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, and checks issued for withdrawals, Forms 1099 issued, and exempt status documentation.

5. **LOAN RECORDS** including applications, financial statements, loan collateral, credit, and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records showing the date, amount and method of repayment, checks used to repay loans and records showing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda, *regardless of date.*

6. **SAFE DEPOSIT BOX RECORDS** including contracts, access records, and records of rental fees paid showing the date, amount, and method of payment (cash or check)

7. **CERTIFICATES OF DEPOSIT, MONEY MARKET CERTIFICATES, AND RETIREMENT ACCOUNTS** including applications, actual instruments(s), records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, any correspondence and any Forms 1099 issued, records showing the annual interest paid or accumulated, the dates of payment or dates interest was earned, checks issued for interest payments.

### PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014

Page 1

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ▮▮▮▮▮▮▮▮▮▮

8. **U.S. TREASURY NOTES AND BILLS** including all records of the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, records of interest paid or accumulated showing the dates and amount of interest paid or accumulated.

9. **STOCKS AND BONDS** including all agreements, contracts, applications for account, signature cards, mutual fund accounts, commodity accounts, margin accounts, or other accounts. Such records include cash receipts, confirmation slips, securities delivered receipts, statements of account, notifications of purchase or sale, representative's stock record, account executive worksheets, correspondence, ledger sheets, cash in slips, buy and sell slips, or other records of these transactions. Documentation and correspondence about stock, municipal or corporate bond transactions, and financial counseling on any of the above.

10. **CREDIT CARD RECORDS** including the above named individual(s)' application, signature card, any credit or background investigations conducted, correspondence about the credit card accounts, monthly billing statements, individual charge invoices, repayment records showing the dates, amounts, and method (cash or check) of repayment, checks used to make repayments (front and back).

11. **PURCHASES OF BANK CHECKS** including cashier's, teller's, or traveler's check records, or money order records including the check register, file copies of the checks or money orders, records showing the date and source of payment for such checks or money orders.

12. **OTHER RECORDS** including records of Currency Transaction Reports (Form 4789), certified checks, wire transfers, or collections, letters of credit, bonds and securities purchased through your bank, savings bond transactions and investment accounts. Such records include those that show the date and amount of the transaction, method (cash or check) and source of payment, destination, recipient, instruments, and statements of transactions.

**Personal appearance is not necessary if the required records are received by mail by the date specified in the summons. A cover letter is required which outlines the information and records provided.**

RECORD FORMAT: In lieu of hard copies, records requested can be provided in the form of magnetic media on either compact disk or 3 ½-inch diskette, whenever available. A record layout for the data is also requested. The record layout should specify the type of information provided and actual electronic file name. Each type of information should be

## PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014

Page 2

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ███████████

recorded in a separate document; however, multiple dates may be included in the same file. The record layout should be placed in the same order as the information listed above. Also, please note that duplicate records should not be provided. If records are already included in the form of magnetic media (compact disk or 3 ½-inch diskette), do not send duplicate hard copies because the hard copies will not be reimbursed.

**PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014**

Page 3

 **Union**Bank

April 8, 2014

John Baptist Ramirez
1442 E. Lincoln Ave. Ste 352
Orange, CA  92865-0000

Re:      Summons Internal Revenue Service

Dear Customer:

On April 3, 2014, the Internal Revenue Service served a Summons on Union Bank, N.A. We have enclosed a copy of the Summons for your reference. The Bank is required to comply with the Summons and will do so 3 business days prior to May 1, 2014.

If you wish to stop the Bank from complying with the Summons, you must follow the procedure of quashing a Summons outlined by the Internal Revenue Service on the Summons itself.

Please note that we must disregard instructions not to comply with the Summons unless you deliver to the Legal Process Department at least 3 business days prior to the production date, a copy of a petition to quash the Summons, endorsed to show that it has been filed with United States District Court.

If you have questions concerning the procedure to quash the Summons, we suggest you contact your attorney.

Should you have any questions, please contact me at 323-278-4770.

Sincerely,


Macaria Martinez
Union Bank, N.A.
Legal Process Department


Ref# S1404035


Legal Process Department                     Tel. 323 278 4770
P.O. Box 30240
Los Angeles, CA 90030                                                              NTCIRS  V1.0
A member of MUFG, a global financial group



14047035

# Summons

LEGAL

In the matter of  JUANDA K ANDERSON

Internal Revenue Service (Division):  SB/SE    I00820    2014

Industry/Area (name or number):  CAA

Periods:  Calendar Year 2011 and Calendar Year 2012  -  January 1, 2011 through December 31, 2012

### The Commissioner of Internal Revenue

To:  Union Bank of California    Attn: Legal Processing Department

At:  1980 Saturn Street, Monterey Park, CA 91755

You are hereby summoned and required to appear before  Trinh Diep - Employee # 1000255644 or Designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers,
and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the
administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See Summons Attachment

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original
and that it is a true and correct copy of the original.

_____    Revenue Agent
Signature of IRS officer serving the summons    Title

**Business address and telephone number of IRS officer before whom you are to appear:**

801 W. Civic Center Drive, MS 4206 Suite 200, Santa Ana, CA  92701-4050    (714) 347-9350

Place and time for appearance at  801 W. Civic Center Drive,  Suite 200, Santa Ana, CA  92701-4050

## IRS

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

on the  1st  day of  May    2014  at  9:00  o'clock  a.  m.
                                    (year)

Issued under authority of the Internal Revenue Code this  1st  day of  April  , 2014
                                                              (year)

_____    Revenue Agent
Signature of issuing officer    Title

_____    Group Manager
Signature of approving officer (if applicable)    Title

Part A - to be given to person summoned

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ▮▮▮▮▮▮▮▮

Issued to:     Union Bank of California
Period(s):     January 1, 2011 through December 31, 2012

### THE FOLLOWING REQUEST APPLIES TO ALL SPECIFIED AND UNSPECIFIED ACCOUNTS FOR WHICH THE ABOVE INDIVIDUAL IS LISTED AS A SIGNER OR BENEFICIARY.

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as having any ownership interests, signatory privileges, rights to make withdrawals, or for which the above-named individual(s) is shown as the trustee, co-signer, guardian, custodian, or beneficiary.  This request for records includes, but is not limited to:

1. **CHECKING ACCOUNT RECORDS** including signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records of all debit and credit memos, Forms 1099 issued, and exempt status documentation.

2.

3. **PRIVATE BANKING** including all agreements, contracts, records, books, ledgers, and other documents relating to all of the "Private Banking" agreements and relationships.

4. **SAVINGS ACCOUNT RECORDS** including signature cards, ledger cards or records showing dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, and checks issued for withdrawals, Forms 1099 issued, and exempt status documentation.

5. **LOAN RECORDS** including applications, financial statements, loan collateral, credit, and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records showing the date, amount and method of repayment, checks used to repay loans and records showing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda, *regardless of date.*

6. **SAFE DEPOSIT BOX RECORDS** including contracts, access records, and records of rental fees paid showing the date, amount, and method of payment (cash or check)

7. **CERTIFICATES OF DEPOSIT, MONEY MARKET CERTIFICATES, AND RETIREMENT ACCOUNTS** including applications, actual instruments(s), records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, any correspondence and any Forms 1099 issued, records showing the annual interest paid or accumulated, the dates of payment or dates interest was earned, checks issued for interest payments.

### PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014

Page 1

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ███████████

8. **U.S. TREASURY NOTES AND BILLS** including all records of the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, records of interest paid or accumulated showing the dates and amount of interest paid or accumulated.

9. **STOCKS AND BONDS** including all agreements, contracts, applications for account, signature cards, mutual fund accounts, commodity accounts, margin accounts, or other accounts.  Such records include cash receipts, confirmation slips, securities delivered receipts, statements of account, notifications of purchase or sale, representative's stock record, account executive worksheets, correspondence, ledger sheets, cash in slips, buy and sell slips, or other records of these transactions. Documentation and correspondence about stock, municipal or corporate bond transactions, and financial counseling on any of the above.

10. **CREDIT CARD RECORDS** including the above named individual(s)' application, signature card, any credit or background investigations conducted, correspondence about the credit card accounts, monthly billing statements, individual charge invoices, repayment records showing the dates, amounts, and method (cash or check) of repayment, checks used to make repayments (front and back).

11. **PURCHASES OF BANK CHECKS** including cashier's, teller's, or traveler's check records, or money order records including the check register, file copies of the checks or money orders, records showing the date and source of payment for such checks or money orders.

12. **OTHER RECORDS** including records of Currency Transaction Reports (Form 4789), certified checks, wire transfers, or collections, letters of credit, bonds and securities purchased through your bank, savings bond transactions and investment accounts. Such records include those that show the date and amount of the transaction, method (cash or check) and source of payment, destination, recipient, instruments, and statements of transactions.

**Personal appearance is not necessary if the required records are received by mail by the date specified in the summons.  A cover letter is required which outlines the information and records provided.**

**RECORD FORMAT:** In lieu of hard copies, records requested can be provided in the form of magnetic media on either compact disk or 3 ½-inch diskette, whenever available.  A record layout for the data is also requested.  The record layout should specify the type of information provided and actual electronic file name.  Each type of information should be

## PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014

Page 2

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ███████████

recorded in a separate document; however, multiple dates may be included in the same
file. The record layout should be placed in the same order as the information listed above.
Also, please note that duplicate records should not be provided. If records are
already included in the form of magnetic media (compact disk or 3 ½-inch diskette), do
not send duplicate hard copies because the hard copies will not be reimbursed.

**PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014**

Page 3

 UnionBank

April 8, 2014

United Associations, Inc.
1442 E. Lincoln Ave. Ste 352
Orange, CA  92865-0000

Re:     Summons Internal Revenue Service

Dear Customer:

On April 3, 2014, the Internal Revenue Service served a Summons on Union Bank, N.A. We have
enclosed a copy of the Summons for your reference. The Bank is required to comply with the Summons
and will do so 3 business days prior to May 1, 2014.

If you wish to stop the Bank from complying with the Summons, you must follow the procedure of
quashing a Summons outlined by the Internal Revenue Service on the Summons itself.

Please note that we must disregard instructions not to comply with the Summons unless you deliver to
the Legal Process Department at least 3 business days prior to the production date, a copy of a petition to
quash the Summons, endorsed to show that it has been filed with United States District Court.

If you have questions concerning the procedure to quash the Summons, we suggest you contact your
attorney.

Should you have any questions, please contact me at 323-278-4770.

Sincerely,


Macaria Martinez
Union Bank, N.A.
Legal Process Department


Ref# S1404035


Legal Process Department
P.O. Box 30240
Los Angeles, CA 90030
A member of MUFG, a global financial group

Tel. 323 278 4770

NTCIRS  V1.0

1404035



# Summons

LEGAL

In the matter of  JUANDA K ANDERSON

Internal Revenue Service (Division):  SB/SE  100820  20147

Industry/Area (name or number):  CAA

Periods:  Calendar Year 2011 and Calendar Year 2012 - January 1, 2011 through December 31, 2012

## The Commissioner of Internal Revenue

To:  Union Bank of California  Attn: Legal Processing Department

At:  1980 Saturn Street, Monterey Park, CA 91755

You are hereby summoned and required to appear before  Trinh Diep - Employee # 1000255644 or Designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the Internal revenue laws concerning the person identified above for the periods shown.

See Summons Attachment

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

| | |
|---|---|
| Signature of IRS officer serving the summons | Revenue Agent |
| | Title |

Business address and telephone number of IRS officer before whom you are to appear:

801 W. Civic Center Drive, MS 4206 Suite 200, Santa Ana, CA  92701-4050      (714) 347-9350

Place and time for appearance at  801 W. Civic Center Drive,  Suite 200, Santa Ana, CA  92701-4050

**IRS**

**Department of the Treasury
Internal Revenue Service**

www.irs.gov

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

on the  1st  day of  May  2014  at  9:00  o'clock  a. m.
                                   (year)

Issued under authority of the Internal Revenue Code this  1st  day of  April  , 2014
                                                                              (year)

| | |
|---|---|
| Signature of issuing officer | Revenue Agent |
| | Title |
| Signature of approving officer (if applicable) | Group Manager |
| | Title |

Part A - to be given to person summoned

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ███████████

Issued to:    Union Bank of California
Period(s):    January 1, 2011 through December 31, 2012

### THE FOLLOWING REQUEST APPLIES TO ALL SPECIFIED AND UNSPECIFIED ACCOUNTS FOR WHICH THE ABOVE INDIVIDUAL IS LISTED AS A SIGNER OR BENEFICIARY.

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as having any ownership interests, signatory privileges, rights to make withdrawals, or for which the above-named individual(s) is shown as the trustee, co-signer, guardian, custodian, or beneficiary. This request for records includes, but is not limited to:

1. **CHECKING ACCOUNT RECORDS** including signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records of all debit and credit memos, Forms 1099 issued, and exempt status documentation.

2.

3. **PRIVATE BANKING** including all agreements, contracts, records, books, ledgers, and other documents relating to all of the "Private Banking" agreements and relationships.

4. **SAVINGS ACCOUNT RECORDS** including signature cards, ledger cards or records showing dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, and checks issued for withdrawals, Forms 1099 issued, and exempt status documentation.

5. **LOAN RECORDS** including applications, financial statements, loan collateral, credit, and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records showing the date, amount and method of repayment, checks used to repay loans and records showing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda, *regardless of date.*

6. **SAFE DEPOSIT BOX RECORDS** including contracts, access records, and records of rental fees paid showing the date, amount, and method of payment (cash or check)

7. **CERTIFICATES OF DEPOSIT, MONEY MARKET CERTIFICATES, AND RETIREMENT ACCOUNTS** including applications, actual instrument(s), records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, any correspondence and any Forms 1099 issued, records showing the annual interest paid or accumulated, the dates of payment or dates interest was earned, checks issued for interest payments.

### PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014

Page 1

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ███████████

8. **U.S. TREASURY NOTES AND BILLS** including all records of the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, records of interest paid or accumulated showing the dates and amount of interest paid or accumulated.

9. **STOCKS AND BONDS** including all agreements, contracts, applications for account, signature cards, mutual fund accounts, commodity accounts, margin accounts, or other accounts. Such records include cash receipts, confirmation slips, securities delivered receipts, statements of account, notifications of purchase or sale, representative's stock record, account executive worksheets, correspondence, ledger sheets, cash in slips, buy and sell slips, or other records of these transactions. Documentation and correspondence about stock, municipal or corporate bond transactions, and financial counseling on any of the above.

10. **CREDIT CARD RECORDS** including the above named individual(s)' application, signature card, any credit or background investigations conducted, correspondence about the credit card accounts, monthly billing statements, individual charge invoices, repayment records showing the dates, amounts, and method (cash or check) of repayment, checks used to make repayments (front and back).

11. **PURCHASES OF BANK CHECKS** including cashier's, teller's, or traveler's check records, or money order records including the check register, file copies of the checks or money orders, records showing the date and source of payment for such checks or money orders.

12. **OTHER RECORDS** including records of Currency Transaction Reports (Form 4789), certified checks, wire transfers, or collections, letters of credit, bonds and securities purchased through your bank, savings bond transactions and investment accounts. Such records include those that show the date and amount of the transaction, method (cash or check) and source of payment, destination, recipient, instruments, and statements of transactions.

**Personal appearance is not necessary if the required records are received by mail by the date specified in the summons. A cover letter is required which outlines the information and records provided.**

**RECORD FORMAT:** In lieu of hard copies, records requested can be provided in the form of magnetic media on either compact disk or 3 ½-inch diskette, whenever available. A record layout for the data is also requested. The record layout should specify the type of information provided and actual electronic file name. Each type of information should be

## PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014

Page 2

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MATERIAL REDACTED

## SUMMONS ATTACHMENT

In the matter of: JUANDA K ANDERSON ███████████

recorded in a separate document; however, multiple dates may be included in the same file. The record layout should be placed in the same order as the information listed above. Also, please note that duplicate records should not be provided. If records are already included in the form of magnetic media (compact disk or 3 ½-inch diskette), do not send duplicate hard copies because the hard copies will not be reimbursed.

**PLEASE RESPOND TO THIS REQUEST BY: May 1, 2014**

Page 3

 **Union**Bank

April 8, 2014

United Associations
1442 E. Lincoln Ave. #352
Orange, CA  92865-0000

Re:    Summons Internal Revenue Service

Dear Customer:

On April 3, 2014, the Internal Revenue Service served a Summons on Union Bank, N.A. We have enclosed a copy of the Summons for your reference. The Bank is required to comply with the Summons and will do so 3 business days prior to May 1, 2014.

If you wish to stop the Bank from complying with the Summons, you must follow the procedure of quashing a Summons outlined by the Internal Revenue Service on the Summons itself.

Please note that we must disregard instructions not to comply with the Summons unless you deliver to the Legal Process Department at least 3 business days prior to the production date, a copy of a petition to quash the Summons, endorsed to show that it has been filed with United States District Court.

If you have questions concerning the procedure to quash the Summons, we suggest you contact your attorney.

Should you have any questions, please contact me at 323-278-4770.

Sincerely,

Macaria Martinez
Union Bank, N.A.
Legal Process Department

Ref# S1404035

Legal Process Department                Tel. 323 278 4770                                    NTCIRS V1.0
P.O. Box 30240
Los Angeles, CA 90030
A member of MUFG, a global financial group